40 So.2d 689

**STATE ex rel. STEELE v. BOARD OF EDUCATION OF FAIRFIELD et al.**

**6 Div. 732.**

Supreme Court of Alabama.

Feb. 17, 1949.

Rehearing Denied May 19, 1949.

Arthur D. Shores and Peter A. Hall, both of Birmingham, and David Hood, Jr., of Bessemer, for appellant.

Harvey Deramus, of Birmingham, and G. P. Benton, of Fairfield, for appellees.

LAWSON, Justice.

The appellant Maenetta Steele was a tenure school teacher, that is, she had attained a continuing service status. § 352, Title 52, Code 1940. After a hearing, as required by § 357, Title 52, Code 1940, the Board of Education of Fairfield, her employing board of education, cancelled her contract of employment on a charge of insubordination.

She began this action of mandamus in the court below to require appellees to reinstate her as a school teacher under the provisions of § 358, Title 52, Code 1940, as amended, which section is as follows: "The action of the employing board of education, if made in compliance with the provisions of this chapter, and unless arbitrarily unjust, shall be final and conclusive. Whether such action complies with the provisions of this chapter, and whether such action is arbitrarily unjust, may be reviewed by petition for mandamus filed in the county where said school system is located. No action at law shall lie for the recovery of damages for the breach of any employment contract of a teacher in the public schools."

The trial court denied the peremptory writ of mandamus. Motion for new trial having been overruled, Maenetta Steele has appealed to this court.

■ Submission was on brief, hence we will consider only those insistences made in appellant's brief. Those assignments of error not insisted on in appellant's brief are treated as waived. Louisville & Nashville R. Co. v. Holland, 173 Ala. 675, 55 So. 1001.

Appellant's first insistence is that the order or resolution cancelling her contract of employment is void and of no effect for the reason that she was not notified of such action until June 2, 1947, and that under the provisions of § 360, Title 52, Code 1940, as amended, she was entitled to notice of such cancellation not later than the first day of May, 1947.

§ 360, Title 52, Code 1940, as originally written read as follows: "Any teacher in the public schools, whether in continuing service status or not, shall be deemed re-employed for the succeeding school year at the same salary, unless the employing board of education shall cause notice in writing to be given said teacher on or before the last day of the term of the school in which the teacher is employed; provided, however, that in no case shall such notice be given the teacher later than the first day of May of the termination of such employment, and such teacher shall be presumed to have accepted such employment unless he or she shall notify the employing board of education in writing to the contrary on or before the first day of June."

Section 360, Title 52, Code 1940, was amended in 1945, General Acts, 1945, p. 646, by adding thereto the following: "The employing board of education shall not cancel the contract of any teacher in continuing service status, nor cause notice of non-employment to be given to any teacher whether in continuing service status or not except by a vote of majority of its members evidenced by the minute entries of said board made prior to or at the time of any such action."

In treating this first contention of appellant, we are not concerned directly with the 1945 amendment, so when mention is made hereinafter of § 360, Title 52, Code 1940, we have reference to the provisions contained in said section as originally enacted unless specific reference is made to the amendatory provisions.

We are called upon here to determine whether the provisions of § 360, Title 52,

Code 1940, to the effect that a teacher is deemed re-employed for the ensuing year unless the employing board of education gives written notice to the teacher of the termination of his or her employment on or before the last day of the term of the school and in no event later than the first day of May, were intended to apply when the employing board of education cancels the contract of a teacher in continuing service status in accordance with the procedural requirements of § 357, Title 52, Code 1940.

As a result of the enactment of the Teacher Tenure Law, two classes of teachers have been created: those who have attained a continuing service status and who may be referred to hereinafter as tenure teachers, and those who have not attained that status and who may be referred to hereinafter as probationary teachers.

The contract of a tenure teacher by virtue of the statute, § 353, Title 52, Code 1940, remains in full force and effect until the parties enter into a new contract or the existing contract is cancelled because of the existence of one of the grounds set out in § 356, Title 52, and in strict compliance with the procedural requirements provided in § 357, Title 52, Code 1940. In other words, an employing board of education, by virtue of the Teacher Tenure Law, is without authority to summarily terminate the employment of a tenure teacher at the end of a school year.

■ But an employing board of education does have the authority to summarily terminate the employment of a probationary teacher at the expiration of the period covered by the contract, usually a year. Whittington v. Barbour County Board of Education, 250 Ala. 692, 36 So.2d 83.

■■ We are of the opinion that § 357, Title 52, Code 1940, governs exclusively in so far as notice and other procedural requirements are concerned in the cancellation of a contract of a tenure teacher, and that § 360, Title 52, Code 1940, controls as to the termination of employment of a probationary teacher.

· ■ We think it clear that the provisions of § 360, Title 52, Code 1940, were incorporated into the Teacher Tenure Law for the purpose of requiring employing boards of education who were not going to reemploy probationary teachers to give such teachers sufficient notice of that fact that they might have time to seek employment elsewhere. But, as before indicated, employing boards of education are without authority to summarily terminate the employment of a tenure teacher, hence such notice as is provided for in § 360, Title 52, Code 1940, would be abortive as to such a teacher.

■ It is true that § 360, Title 52, Code 1940, contains language susceptible of the construction that its requirements as to notice, etc., apply to all teachers, for it says "any teacher in the public schools, whether in continuing service status or not * * *." But we think it clear that in using that language the legislature intended merely to emphasize the fact that the provisions of that section applied to those teachers who were not in continuing service status, for with one or possibly two exceptions all the preceding sections of the Tenure Law relate exclusively to tenure teachers.

Termination of employment and cancellation of an existing contract are entirely different matters. The latter can be done only for cause and that cause may arise at any time. Certainly the legislature did not intend to limit the right of an employing board of education to cancel the contract of a teacher for cause to any specific time during the year, and yet such would be the result if § 360, Title 52, Code 1940, is given the construction as contended for by counsel for appellant.

We hold, therefore, that the provisions of § 360, Title 52, Code 1940, as originally written, apply only to probationary teachers and have no application to tenure teachers, hence there is no merit in appellant's contention that the order or resolution of her employing board of education cancelling her contract, under date of May 27, 1947, and of which she had notice on June 2, 1947, is void and of no effect because not taken prior to May 1, 1947.

In reaching this conclusion we have given consideration to the case of Holcombe v. County Board of Education of Marion County et al., 242 Ala. 20, 4 So.2d 503, and to the case of Brown v. Board of Education of Blount County, 242 Ala. 154, 5 So.2d 629. But what was said in those cases as to the effect of § 360, Title 52, Code 1940, must be considered in the light of the issues there presented. Both of those cases involved the question as to whether or not the employment of probationary teachers had been correctly terminated.

Appellant insists that due process of law was not observed in the hearing and that the hearing was not held in accordance with the requirements of § 357, Title 52, supra, in that she was not permitted to present evidence bearing upon the reasons for the proposed cancellation of her contract and that, therefore, the order or resolution cancelling her contract was void and of no effect and, hence, the trial court erred in not granting the peremptory writ of mandamus.

The appellant was charged with insubordination upon the ground that she refused twice to take a mental ability test which was required by a rule or regulation of the employing board of education.

At the hearing the following undisputed facts were made to appear: That the employing board of education on or about February 27, 1947, adopted and entered on its minutes a rule requiring all classroom teachers to take a mental ability test; that this test was presented to the teachers of the various schools under the jurisdiction of the board on or about March 25, 1947, without any notice having been given them that they were to take the test; that on that date some of the teachers took the test, others refused, and still others merely signed their names to the papers on which the questions appeared and returned the papers without answering the questions; that Maenetta Steele was in the latter group and that she was the only teacher at her school who did not take the test.

The Superintendent of Education testified that he gave all the teachers who did not take the test when it was first presented an opportunity to take it at a later date; that at the time of the hearing all the teachers had taken the test except Maenetta Steele, but that she refused to avail herself of that opportunity when it was given her. As to his refusal to permit Maenetta Steele to take the test at a later date, he stated: "Maybe a week later after I had given her the second and third chance she came back to my office and wanted to know if I would give her another chance to take the test, and I said 'No, you have had two chances already and have refused, and you will not be given another chance.' " He was corroborated in his statement that Maenetta Steele refused a second time to take a test by a Mrs. Gregory who, it appears, was the Superintendent's secretary.

Maenetta Steele, testifying in her own behalf, admitted that she did not answer the questions when they were presented to her on March 25, 1947, but she denied that she was ever given another opportunity to take the test at a later date. As to the events which transpired subsequent to March 25, 1947, in connection with the test, she stated: That on the following morning, March 26th, the Superintendent asked her why she didn't take the test, but did not offer to give her another opportunity to do so; that on April 11, 1947, she was summoned to the office of the Superintendent, who told her that she had not told him she was "head of a union" (She was at that time temporary president of the teachers' union.) and at that time the Superintendent also told her that she was "guilty of insubordination and the board felt that I would do better work under better circumstances" and asked her to resign; that on April 17, 1947, she requested an opportunity to take the test, but her request was denied, although on that day other teachers who had not taken the test on March 25 were given a chance to take it. Maenetta Steele also stated that prior to this incident there had never been any complaint about her work or any charge that she had not complied with the rules and regulations of the board and the orders of her superiors, although she had been in the school system of the city of Fairfield for five years.

Maenetta Steele was permitted to show, by the testimony of Alfreda Gray, who

was also a teacher in the Fairfield schools, that the latter had not taken the test on March 25, 1947, and that she had been permitted to take it on April 16, 1947. A statement of two other teachers to the same effect was let into the record.

A probationary teacher testified that she was a member of the "union" and that she had been notified that her contract of employment was terminated; that in the conversation with the Superintendent he stated that an example would have to be made of some of the teachers.

The Superintendent thereafter stated that the union had nothing to do with the giving of the tests.

As we understand the brief filed here on her behalf, appellant's insistence that the hearing was not conducted in accordance with the provisions of § 357, Title 52, supra, and that, therefore, the order or resolution cancelling her contract was void, was based on the following circumstances:

(1) The refusal of the Superintendent of Education to answer questions propounded to him by her counsel seeking to show that the Superintendent did not approve of the teachers' unions.

(2) The refusal of the Superintendent of Education to answer questions propounded to him by counsel for appellant seeking to show that although he had refused to grant appellant's request to take the test, he had permitted other teachers to do so although they had not taken the test when it was first submitted to them on March 25, 1947.

(3) The action of the board of education in refusing to permit the introduction into evidence of the minutes of the board of education showing the rule or regulation of February 27, 1947, requiring teachers to take the mental ability test.

■ As before indicated, under the provisions of § 358, Title 52, Code 1940, as amended, the trial court's right to review the action of the employing board of education was limited to two considerations, first, whether such action was taken in accordance with the requirements of the Teacher Tenure Law, and, second, whether such action was arbitrarily unjust. If either of those conditions existed then due

process was not observed. Where, as here, a purported hearing was held after notice, the circuit court's review is limited to the proceedings before the board of education. In such a case the hearing of the mandamus proceeding is not a trial de novo. Gainer v. Board of Education of Jefferson County et al., 250 Ala. 256, 33 So.2d 880.

The question is, did the trial court err in refusing to grant the peremptory writ of mandamus under its limited review because of the circumstances above enumerated, when those circumstances are considered in connection with the other proceedings at the hearing?

The answer to the question here presented requires a consideration of the nature, functions, and modus operandi of boards of education, and some of the distinctions between administrative tribunals and judicial tribunals.

■ A board of education is a part of the executive department, but in the operation of our public school system it exercises not only purely administrative functions, but others of a legislative character, and still others of a quasi-judicial character. Of the administrative type are the hiring of teachers, their assignment in the school system, and the management and control of school property. Of the legislative type are the making of rules and regulations and the determination of policies governing the hiring and assignment of teachers, and the use of school property. Of the quasi-judicial type is the power to hear and determine proceedings for the cancellation of contracts of tenure teachers.

[12] Although a board of education in the exercise of such powers of cancellation acts as a quasi-judicial body, it does not thereby lose its identity as an administrative body and become a court to the extent that the regularity of its action is to be tested by strict legal rules prevailing in court proceedings.

■ While no particular form of procedure is prescribed for such hearings, due process must be observed. Such is the rule generally as to hearings provided for by statute before administrative agencies. Morgan v. United States, 304 U.S. 1, 58 S.Ct. 773, 82 L.Ed. 1129; Inter-

state Commerce Commission v. Louisville & Nashville R. R. Co., 227 U.S. 88, 33 S.Ct. 185, 57 L.Ed. 431; Alabama Electric Cooperative, Inc., et al. v. Alabama Power Co., Ala.Sup., 36 So.2d 523; Alabama Power Co. v. City of Fort Payne, 237 Ala. 459, 187 So. 632, 123 A.L.R. 1337.

The anomaly in procedure which permits the board of education, an administrative body, to serve in the triple capacity of complainant, prosecutor, and judge makes it vitally necessary that in reviewing administrative decisions courts zealously examine the record with the view to protecting the fundamental rights of the parties, lest the rule against arbitrariness and oppressiveness become a mere shibboleth. An appeal not being provided for, the review by mandamus must not be permitted to degenerate into a mock ceremony. The least that the courts can do is to hold high the torch of "fair play" which the highest court of our land has made the guiding light of administrative justice. Morgan v. United States, supra.

On the other hand, courts cannot, under the guise of existing judicial power, usurp merely administrative functions by setting aside an order of an administrative agency made within the scope of the power delegated to it, upon the ground that such power was inexpediently exercised. Interstate Commerce Commission v. Illinois Central Ry. Co., 215 U.S. 452, 470, 30 S.Ct. 155, 160, 54 L.Ed. 280; Greco v. Roper, 145 Ohio St. 243, 61 N.E.2d 307.

One of the statutory grounds for the cancellation of a contract of a tenure teacher is "insubordination." § 356, Title 52, Code 1940. The term "insubordination" is not defined in the statute, but unquestionably it includes the willful refusal of a teacher to obey the reasonable rules and regulations of his or her employing board of education.

The City Board of Education of Fairfield had the statutory authority to prescribe rules and regulations for the conduct of the teachers in schools under its jurisdiction. § 167, Title 52, Code 1940. There is no contention made here that the rule adopted by the Fairfield Board of Education on February 27, 1947, and with which we are here concerned, was unreasonable. We think it shows on its face that it is a reasonable rule.

Members of the board of education are not expected to devote their entire time to school affairs. From necessity, they act to a large degree upon the advice and recommendations of their chief executive officer, the Superintendent of Education. Having adopted the rule that all classroom teachers must take a mental ability test, the board looked to the Superintendent for the enforcement of this rule. The members of the board did not give the test and hence, any information which they received as to the conduct of Maenetta Steele in relation to the test must have come from the Superintendent and it was, no doubt, upon his advice and recommendation that the board adopted a resolution on April 25, 1947, to the effect that consideration would be given on May 27, 1947, to the cancellation of her contract on the ground of insubordination. In passing such a resolution the board acted in an administrative capacity and not as a judicial tribunal. Such resolution was not a finding that Maenetta Steele was guilty of the conduct charged. Such a finding could not be made until May 27, 1947, and until a hearing had been held if requested by Maenetta Steele.

As above pointed out, such a hearing was requested and held. Although at this hearing Maenetta Steele was entitled to present evidence tending to refute the charge made against her, such hearing was not solely for the benefit of the teacher. It also served the purpose of enabling the board of education to hear both sides of the case for, as before pointed out, their prior action could only have resulted from information furnished them by the Superintendent.

Maenetta Steele admitted that she did not take the test when it was first presented to her on March 25, 1947, and although she denied that she was ever given another opportunity to do so, there is ample evidence to support a finding that she had been given that chance.

On the other hand, the Superintendent admitted that Maenetta Steele requested that she be permitted to take the test

sometime prior to the date on which the board instituted these proceedings, but that he refused to permit her to do so. It also appears from statements of other teachers that they were given that chance on or about the very day that Maenetta Steele's request was refused.

The teacher, Maenetta Steele, sought to show that the reason why the Superintendent permitted other teachers to subsequently take the test and refused her that privilege was because he had a personal dislike for her due to her activity in the union. Although the Superintendent made the statement that the union had nothing to do with the test, yet he refused to answer questions propounded to him by counsel for Maenetta Steele as to whether he approved of teachers organizing into a teachers' union. Likewise he refused to answer questions as to whether he had permitted other teachers to take the test who had either refused or failed to do so when it was first given on March 25th.

We think that, in view of the nature of the other evidence presented at the hearing, Maenetta Steele was entitled to have the Superintendent answer these questions. His answers thereto could have materially affected the final decision of the board of education. We cannot say that the board of education would have cancelled Maenetta Steele's contract if the Superintendent of Education had admitted that he had subsequently permitted other teachers to take the test and that he did disapprove of teachers organizing into teachers' unions, since the board might have found that his refusal to grant Maenetta Steele's request to take the test was based on her union activities. She was not charged with having violated any rule or regulation of the board of education purporting to prohibit teachers engaging in union activities. The charge was insubordination. We think the record tends to show that Maenetta Steele was treated differently from other teachers and therefore we feel that while Maenetta Steele was permitted to give evidence at the hearing, she was prevented from presenting evidence tending to show that the proceedings to cancel her contract were motivated by personal reasons. Section 356,

Title 52, Code 1940, expressly provides that the cancellation of a teacher's contract may not be made for political or personal reasons.

The judgment of the trial court is reversed and the cause is remanded to that court, with directions to issue a peremptory writ of mandamus ordering the employing board of education to vacate the order cancelling the contract of Maenetta Steele and to reinstate her as a teacher in the school system of the City of Fairfield as of the beginning of the school year 1947-1948, subject to the result of another hearing under § 357, Title 52, Code of 1940. State ex rel. Ging v. Board of Education of City of Duluth, 213 Minn. 550, 7 N.W.2d 544; Ford Motor Co. v. National Labor Relations Board, 305 U.S. 364, 374, 59 S.Ct. 301, 307, 83 L.Ed. 221.

Reversed and remanded with directions.

BROWN, FOSTER, and STAKELY, JJ., concur.