280 So.2d 123

The MARSHALL COUNTY BOARD OF EDUCATION of Marshall County, Alabama

v.

STATE TENURE COMMISSION for the State of Alabama.

8 Div. 66.

Court of Civil Appeals of Alabama.

July 5, 1972.

Rehearing Denied Aug. 23, 1972.

428

T. J. Carnes, Albertville, for appellant.

Lusk & Lusk, Louis B. Lusk, Sp. Asst. Atty. Gen., Guntersville, for appellee.

Truman Hobbs, Montgomery, for Ala. Education Assn., amicus curiae.

HOLMES, Judge.

This is an appeal from a judgment of the Circuit Court of Marshall County denying appellant's petition for mandamus.

The record discloses that appellant, Marshall County Board of Education, in May of 1970, transferred one Arthur Baugh from the position of principal of Albertville High School to the position of teacher and assistant coach in another school. This action of the board was appealed to the Alabama State Tenure Commission, and in August of 1970 that body entered an order declaring the action of the Marshall County Board of Education, as it related to Arthur Baugh's transfer, null and void.

The Tenure Commission's order was the subject of an appeal to this court, being Marshall County Board of Education v. State Tenure Commission, 8 Div. 67, 50 Ala.App. 418, 280 So.2d 107. This court has ruled in that case and many of the issues in the matter at hand are disposed of in case No. 67.

After the State Tenure Commission's ruling regarding the transfer of Arthur Baugh the Marshall County Board of Education, in August of 1970, passed a resolution proposing to cancel the contract of Arthur Baugh for reasons of incompetency and insubordination. Mr. Baugh appealed the board's action to the Tenure Commission and the commission found the board of education's action in canceling Arthur Baugh's contract was motivated by political or personal reasons violative of Tit. 52, § 358, of the Code of Alabama of 1940 (Recompiled 1958). The Tenure Commission, in its order, specifically made no finding as to the competency or insubordination of Mr. Baugh.

Tit. 52, § 358, of the Code reads as follows:

"Cancellation of an employment contract with a teacher on continuing service status may be made for incompetency, insubordination, neglect of duty, immorality, justifiable decrease in the number of teaching positions, or other good and just cause; but cancellation may not be made for political or personal reasons."

On petition for mandamus the Circuit Court found the Tenure Commission complied with Chapter 13 of Tit. 52 and specifically referred to Tit. 52, § 361, which reads as follows:

"The action of the state tenure commission in reviewing transfers of teachers or cancellation of teacher contracts, if made in compliance with the provisions of this chapter and unless unjust, shall be final and conclusive. Whether such action complies with the provisions of this chapter and whether such action is unjust, may be reviewed by petition for mandamus filed in the circuit court of the county where said school system is located."

Appellant assigns some twenty-seven assignments of error. This court, in the companion case, referred to herein above, has decided the majority of appellant's contentions contained in this appeal. This court feels the dispositive issues of the case at bar are: 1. Was the Tenure Commission's action in considering evidence outside the record such error as to void the proceedings? 2. Can the Tenure Commission's order be said to be unjust and violative of Tit. 52, § 361, in that the record does not support a conclusion that Arthur Baugh's contract cancellation was for political or personal reasons?

As to dispositive issue No. 1, the record reveals that after arguments of counsel for the Marshall County School Board and counsel for Arthur Baugh, and after the formal hearing of the State Tenure Commission was concluded, the chairman of the State Tenure Commission advised the attorneys, including appellant's attorney, that the commission proposed to go to the office of the State Superintendent of Education for the purpose of examining certain records in connection with the case.

Tit. 52, § 360, of the Code reads as follows:

" . . . On said appeal the commission will consider the case on the record of the proceedings before the said board and the evidence as recorded at such hearing. The commission shall by a majority vote determine the validity of the action by the board, and shall render its decision within five days after its hearing. . . ."

■ As appellee admits, the principle embodied in the above mentioned Code section is that the Tenure Commission is to consider the case on the record of the proceedings before the board and the evidence as recorded at the hearing. The hearing, again as appellee admits, before the Tenure Commission is in the nature of review and is not to be a trial *de novo*. No one contends that the action of the Tenure Commission was correct. Appellee does contend that appellant raised no objection to the Tenure Commission's action and thereby waived his right to now object. The record at page 23 reveals the following stipulation:

### "STIPULATION OF PARTIES

"It is stipulated and agreed by the parties that Exhibit A attached hereto and made a part hereof is a true and correct copy of the minutes of the Alabama State Tenure Commission of the meeting of December 3, 1971.

"It is further stipulated and agreed by the parties that following the arguments on the question whether the Tenure Commission had jurisdiction, the Chairman of the Commission advised the attorney for Arthur Baugh and the attorney for the Marshall County Board of Education in the hall outside the hearing room after the parties had been dismissed from said room and the Commission had considered the question for some minutes that the Commission proposed to go to the office of the State Superintendent of Education for the purpose of examining certain records in connection the with [sic] case and neither of said attorneys raised any objection to said proposal or made any statement with reference thereto.

"/s/ T. J. Carnes
Attorney for Marshall County Board of Education

"/s/ Louis B. Lusk
Attorney for Arthur Baugh

"/s/ Louis B. Lusk
Special Assistant Attorney General

"/s/ W. C. S., Special Judge

"Filed in open court 4–22–71."

It is a well accepted principle that a party to a civil action may waive his rights or defenses insofar as they affect him. 28 Am.Jur.2d, Estoppel & Waiver, § 166. It is a further well accepted principle that a trial court will not be put in error unless the matter complained about on appeal was called to its attention by objection or by other appropriate method. Rice v. Hill, 278 Ala. 342, 178 So.2d 168; State v. Boyd, 271 Ala. 584, 126 So.2d 225; Thompson v. Havard, 285 Ala. 718, 235 So.2d 853.

The stipulation signed by appellant clearly reflects the appellant was *advised* that the commission *proposed* to go to the office of the State Superintendent of Education. There was opportunity to object.

■ It should be noted that the matter considered by the Tenure Commission at the office of the Superintendent of Education was the High School Accreditation report and the Institute list, both documents bearing on the question of whether Arthur Baugh's position was one of administrator or principal. (T. page 24). This court, in *Marshall County Board of Education, v. State Tenure Commission for the State of Alabama*, 8 Div. 67, 50 Ala.App. 733, 280 So.2d 122, the companion case of this matter, determined Arthur Baugh was the principal of Albertville High School. This determination was made on evidence presented by the record. The Tenure Commission could therefore have well made its determination on the question of tenure from legal competent evidence presented to it. The commission's action in going outside the record is error without injury. Supreme Court Rule 45.

We now address ourselves to the second dispositive issue. The record in this case is voluminous; the witnesses numerous and to detail their testimony would serve no useful purpose.

After considering the testimony and arguments of counsel, the State Tenure Commission issued the following order:

"IN THE MATTER OF ARTHUR BAUGH BEFORE THE STATE TENURE COMMISSION

"A meeting of the State Tenure Commission was held in Montgomery, on December 3, 1970, at 10:00 A.M. for the purpose of hearing the above matter.

"After reviewing the record and hearing the arguments of counsel, the Commission finds the following:

"The Commission is of the opinion that the cancellation of Mr. Arthur Baugh's contract by the Marshall County Board of Education as Principal of Albertville High School was motivated by political or personal reasons, and is therefore in conflict with Title 52, Section 358, Code of Alabama 1940.

"The Commission makes no finding as to the competency or incompetency of Mr. Baugh, neither does the Commission make any finding as to whether or not Mr. Baugh was guilty of insubordination as charged by the Board.

Done this 3rd day of December, 1970.

"/s/ J. T. Greene, Chairman
Alabama State Tenure
Commission"

Appellant, in his assignment of errors, contends that there is no evidence in the record that the Board of Education, itself, was politically motivated, only the Superintendent of Education might have been politically or personally motivated.

To accept appellant's contention in this regard is to totally ignore the realities of the situation.

Members of boards of education do not devote much of their time to school affairs. They meet usually once a month and are not involved in the daily activities and administration of the school system and its individual schools. The members have little opportunity to observe or con-

tact the various teacher personnel. From necessity, they act to a large decree upon the advice and recommendations of their chief executive officer, the Superintendent of Education. The superintendent, of necessity, to a large degree, acts upon the advice and recommendation of the principals or administrators. Ordinarily, the actions of the board result from recommendation of the superintendent. The board ordinarily has no knowledge of the basis of such recommendations other than what is given it by the superintendent.

■ The purpose of the provisions of Tit. 52, § 358, supra, is clearly to prevent cancellation of a teacher's contract on any basis other than professional reasons. If a teacher's contract is cancelled for personal or political reasons, it is a violation of § 358. The issue is whether a teacher's status is changed for reasons other than professional or the needs of the schools.

As a rule, the board acts after recommendations of the superintendent and informs a teacher of its intent to transfer or cancel, stating the reasons therefor. Tit. 52, § 123, Code of Alabama. This is an administrative act of the board. The teacher may appear and contest. The board sits in the hearing as a judicial body to hear both sides of the case. To say that evidence upon such hearing indicating that the basis for the cancellation is political or personal reasons of persons other than members of the board is not for consideration is an anomaly and clearly contrary to the intent of the statute.

This court believes the statement of Justice Lawson in the case of State v. Board of Education of Fairfield, 252 Ala. 254, 40 So.2d 689, points out the meaning of Chapter 13 of Tit. 52. That statement in pertinent part is as follows:

"Members of the board of education are not expected to devote their entire time to school affairs. From necessity, they act to a large degree upon the advice and recommendations of their chief

executive officer, the Superintendent of Education. Having adopted the rule that all classroom teachers must take a mental ability test, the board looked to the Superintendent for the enforcement of this rule. The members of the board did not give the test and hence, any information which they received as to the conduct of Maenetta Steele in relation to the test must have come from the Superintendent and it was, no doubt, upon his advice and recommendation that the board adopted a resolution on April 25, 1947, to the effect that consideration would be given on May 27, 1947, to the cancellation of her contract on the ground of insubordination. In passing such a resolution the board acted in an administrative capacity and not as a judicial tribunal. Such resolution was not a finding that Maenetta Steele was guilty of the conduct charged. Such a finding could not be made until May 27, 1947, and until a hearing had been held if requested by Maenetta Steele.

"As above pointed out, such a hearing was requested and held. Although at this hearing Maenetta Steele was entitled to present evidence tending to refute the charge made against her, such hearing was not solely for the benefit of the teacher. It also served the purpose of enabling the board of education to hear both sides of the case for, as before pointed out, their prior action could only have resulted from information furnished them by the Superintendent.

.     .     .     .     .     .

"The teacher, Maenetta Steele, sought to show that the reason why the Superintendent permitted other teachers to subsequently take the test and refused her that privilege was because he had a personal dislike for her due to her activity in the union. Although the Superintendent made the statement that the union had nothing to do with the test, yet he refused to answer questions propounded to him by counsel for Maenetta

Steele as to whether he approved of teachers organizing into a teachers' union. Likewise he refused to answer questions as to whether he had permitted other teachers to take the test who had either refused or failed to do so when it was first given on March 25th.

"We think that, in view of the nature of the other evidence presented at the hearing, Maenetta Steele was entitled to have the Superintendent answer these questions. His answers thereto could have materially affected the final decision of the board of education. We cannot say that the board of education would have cancelled Maenetta Steele's contract if the Superintendent of Education had admitted that he had subsequently permitted other teachers to take the test and that he did disapprove of teachers organizing into teachers' unions, since the board might have found that his refusal to grant Maenetta Steele's request to take the test was based on her union activities. She was not charged with having violated any rule or regulation of the board of education purporting to prohibit teachers engaging in union activities. The charge was insubordination. We think the record tends to show that Maenetta Steele was treated differently from other teachers and therefore we feel that while Maenetta Steele was permitted to give evidence at the hearing, she was prevented from presenting evidence tending to show that the proceedings to cancel her contract were motivated by personal reasons. Section 356, Title 52, Code 1940, expressly provides that the cancellation of a teacher's contract may not be made for political or personal reasons." (252 Ala. at pages 261 and 262, 40 So.2d at page 695.)

In other words, the superintendent is the man "on the scene" and to effectively function the board could, of necessity, accept the superintendent's recommendation. This is not a criticism of this particular board of education or of boards of educa-tion in general, but is a fact of school administration life.

■ In Lamar County Board of Education v. Steedley, 45 Ala.App. 672, 236 So.2d 337, this court makes the following statement:

"In the absence of a statutory definition of 'personal reasons,' it then becomes our duty to define the term. As used in the context of Section 355, supra, we define 'personal reasons' to be those reasons personal to the Board members themselves and not to anyone else. The Board is given the authority to transfer, hence it would be inconsistent to say that the reasons for the transfer would be other than personal to the Board members." (45 Ala.App. at page 680, 236 So.2d at page 344.)

There is no indication in the *Steedley* case that this court considered State v. Board of Education of Fairfield, supra. The statement from *Steedley* goes too far and should be recanted. To recant the statement does not affect the decision in *Steedley* as it was declared to require reversal on other grounds.

Appellant further argues that the commission's action was contrary to the law in that it did not consider or rule on the competency or insubordination lodged against Arthur Baugh. Appellant points out to this court that a situation could arise wherein a teacher and/or a principal who was unquestionably incompetent or insubordinate and evidence was clearly presented that he was so incompetent or insubordinate, but because of political differences an incompetent person would be allowed to continue his incompetency because any taint of political differences would prevent the proper authority from discharging him. We do not feel that appellant's contention is appropriate in the case at hand. Minutes of the commission meeting on pages 24, 25, and 26 of the record clearly reflect that in the judgment of the commission the primary cause of Arthur Baugh's dismissal

from his position as principal of the Albertville High School was motivated by political and/or personal reasons. In its determination that the primary cause of Arthur Baugh's dismissal was because of political or personal reasons, it can only be concluded that the commission felt that this was the reason for his dismissal and not the charges of incompetency and insubordination, and therefore did not have to consider these charges. The minutes of the Tenure Commission (T. page 25) state the following:

"After lengthy review and discussion of the transcripts and other material concerning this case, Mr. Zeanah made a motion that the Tenure Commission rule only that the primary cause of dismissal of Arthur from his position as principal of Albertville High School by the Marshall County Board of Education was motivated by political and/or personal reasons and no effort was made to rule on the charge of incompetency or insubordination. This motion was seconded by Mrs. Childs and carried."

From a careful study of the testimony, and keeping in mind that the trial judge had this testimony available, this court cannot say that the State Tenure Commission's action was unjust or in violation of the teacher tenure law. Tit. 52, § 361, supra, is clear in its meaning that the action of the State Tenure Commission, in considering cancellation of teacher contracts, is final and conclusive unless such action does not comply with the teacher tenure law and unless unjust. As the Supreme Court of Alabama has stated, it is clear that the State Tenure Commission expresses the intent of the legislature to protect the right of tenure teachers and to preserve to them a certain degree of academic freedom and freedom from harassment that is sometimes caused by intra-community political conflict, and at the same time reserve to local authorities, through the local county school boards and local school officials,

proper authority within the area of their particular functioning. State Tenure Commission v. Madison County Board of Education, 282 Ala. 568, 213 So.2d 823.

As the court further stated in the *Madison County Board of Education* case, supra:

"This appellate aspect of the tenure teacher law, that is, the State Tenure Commission, to which a review may be had of decisions of local school boards, is a covenant made by the people of Alabama with tenure school teachers, as expressed by legislative enactment . . . Thus, there now exists a 'tenure' law and an independent appellate forum. The legislature, no doubt, felt it was necessary to have an appellate forum for tenure teachers, so that they could be removed from the heat and the aggressiveness and pressures sometimes generated in intracommunity or intra-county politics. This 'tenure teacher' law establishes a 'means' between two extremes—the extreme of absolute local control and the other extreme of absolute freedom from any local control." (282 Ala. at page 671, 213 So.2d at page 833)

This court, with the above view in mind, cannot say that the Alabama State Tenure Commission's ruling and finding in the case at bar were unjust and not in compliance with the teacher tenure law.

The above and this court's holding in the companion case, The Marshall County Board of Education v. State Tenure Commission for the State of Alabama, 8 Div. 67, 50 Ala.App. 733, 280 So.2d 122, being dispositive of all assignments of error, this court does hereby affirm the ruling of the trial court.

Affirmed.

WRIGHT, P. J., and BRADLEY, J., concur.