405 So.2d 366 (1981)
Ex parte Dr. Allen P. HAYES.
(Re Allen P. HAYES v. MOBILE COUNTY BOARD OF SCHOOL COMMISSIONERS).
80-321.
Supreme Court of Alabama.
August 27, 1981.
*367 J. U. Blacksher of Blacksher, Menefee & Stein, Mobile, for petitioner.
T. Dwight Reid of Perloff, Reid & Gibbons, Mobile, for respondent.
ADAMS, Justice.
We granted a writ of certiorari to the Court of Civil Appeals, 405 So.2d 364, in this case to review their affirmance of the decision of the Circuit Court of Mobile County approving the manner in which the petitioner was terminated by the Mobile County School Board. The petitioner, Dr. Allen P. Hayes (Dr. Hayes), at the time of his employment by the Mobile County School Board (Board) held an Ed.D. degree from the University of Florida and a regular teacher's certificate from the State of Alabama. He was hired on September 19, 1978, about two weeks after the 1978-79 school term commenced, as a full-term teacher of the first and second grades at Mertz Elementary School. Although he was interviewed at the time he was hired, he was not given a written contract until later. After he began his duties on September 22, 1978, Dr. Hayes received an interim contract which he signed. The relevant part of the interim contract is as follows:
The Board of School Commissioners of Mobile County has authorized me, as Superintendent of Education to contract for your services as Teacher assigned to Mertz School at a daily rate of pay of $61.844.
Your responsibilities will begin September 22, 1978 and subject to immediate termination upon noticeprovided, that in the event for good and sufficient reason it is determined that the responsibilities will begin at a different date and/or end at a different date, such change will act as a reformation to this contract and you will be governed thereby. However, in any event, you will be paid for the actual period of work required of you under this paragraph.
Notice is hereby given, pursuant to the provisions of Title 52, Section 361(2) Code of Alabama, that you will not be re-employed under this contract beyond the termination date stated above, except as changed by the Mobile County Public School Board in the manner set forth in the preceding paragraph.
This offer when accepted becomes an entire contract to serve for the whole contract period contemplated as hereinbefore stated. Should you, without Board approval fail to report as set forth above, *368 voluntarily abandon the contracted services before the termination of the whole contract period, it is agreed hereby that the Board may retain in its hands any earned but unpaid salary and such money so retained shall be deemed liquidated damages to compensate the Board for the loss sustained by such breach on your part.
This offer is sent to you in duplicate. Should you accept, sign one copy and return it to the Superintendent of Education not later than two (2) calendar weeks from the date the offer bears. A delay of more than two weeks voids this offer.
It is undisputed that Dr. Hayes was not a tenured teacher with the Board. Dr. Hayes worked approximately six weeks when he was terminated on November 28, 1978, by the assistant superintendent for personnel. There is evidence in the record that his services were unsatisfactory and that he had been counselled prior to termination. The termination was subsequently approved by the Board on January 24, 1979. The Circuit Court of Mobile County ruled that Dr. Hayes was illegally terminated on November 28, 1978, because he was not discharged by the Board in compliance with Code 1975, § 16-24-12, and awarded him back pay up to January 24, 1979. Dr. Hayes appealed to the Court of Civil Appeals, seeking back pay for the full 1978-79 school year. It affirmed.
The sole issue for our consideration is whether summary termination of a non-tenured teacher before the school year is completed violates the Alabama Teacher Tenure Act, Code 1975, § 16-24-1, et seq., or the 14th amendment to the United States Constitution. Our answer to this question turns on a proper determination of what due process rights the petitioner may or may not have arising from the events involved in his case. In other words, was Dr. Hayes denied a "liberty" or "property" interest protected by the federal constitution? In order to properly answer these questions we must, of course, determine whether Dr. Hayes had rights under the Alabama Teacher Tenure Act that were abridged.
The Supreme Court of the United States, in Board of Regents of State Colleges v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), held that a college professor who was hired for one academic school year and had not achieved tenure, could be terminated at the end of that year without receiving from his employer a reason for such termination or a hearing wherein he could object to such termination, provided he was not discharged because of the exercise of first amendment rights and provided he was not stigmatized in any way by the college's action. It is to be noted that the termination in the Roth case was at the end of the school year and the court specifically found that his termination did not infringe on his liberty or property rights. But it also said:
Similarly, in the area of public employment, the Court has held that a public college professor dismissed from an office held under tenure provisions, Slochower v. Board of Education, 350 U.S. 551 [, 76 S.Ct. 637, 100 L.Ed. 692] and college professors and staff members dismissed during the terms of their contracts, Wieman v. Updegraff, 344 U.S. 183 [, 73 S.Ct. 215, 97 L.Ed. 216] have interests in continued employment that are safeguarded by due process. Only last year, the Court held that this principle "proscribing summary dismissal from public employment without hearing or inquiry required by due process" also applied to a teacher recently hired without tenure or a formal contract, but nonetheless with a clearly implied promise of continued employment. Connell v. Higginbotham, 403 U.S. 207, 208 [, 91 S.Ct. 1772, 1773, 29 L.Ed.2d 418].
Roth, at 576-7, 92 S.Ct. at 2708-09.
The purpose of the Alabama Teacher Tenure Act was to protect Alabama school teachers. In Board of Education of Marshall County v. Baugh, 240 Ala. 391, 395, 199 So. 822, 825 (1941), this court said:
The very laudable purpose of this Act was to insure to the teachers some measure of security in their important work and to free them, at least to a measurable extent from the "vicissitudes of politics" or the likes or dislikes of those charged with the administration of school affairs.

*369 Such being the manifest purpose of the Act it should be liberally construed in favor of the teachers, who constitute the class designated to be its primary beneficiaries. Andrews v. Union Parish School Board, La.App., 184 So. 574; State ex rel. Bass v. Vernon Parish School Board, La. App., 194 So. 74; State ex rel. Kennington v. Red River Parish School Board, La.App., 193 So. 225.
The Alabama Teacher Tenure Act created two classes of teachers in the Alabama public school system, those teachers with continuing service status (tenured teachers) and those teachers who had not reached continuing service status, (probationary or non-tenured teachers). Foster v. Blount County Board of Education, 340 So.2d 751 (Ala.1976); State v. Board of Education of Fairfield, 252 Ala. 254, 40 So.2d 689 (1949). In addition to teachers who are subject to the Teacher Tenure Act, there are those known as substitute teachers. Substitute teachers "... replace teachers absent on sick leave during the time schools are in session and where the regular teacher is paid the contract salary while on sick leave in accordance with the rules and regulations of the state board of education." Code 1975, § 16-3-36(a). These teachers are not allowed under our law to build time toward tenure. However, each category, to the extent it has rights prescribed by our laws, is entitled to the full protection thereof by our courts.
Two sections of the Teacher Tenure Act are crucial to an understanding of Dr. Hayes's claim in this case. They are §§ 16-24-11 and 16-24-12 of the Code of Alabama, 1975. Section 16-24-12 reads as follows:
Any teacher in the public schools, whether in continuing service status or not, shall be deemed offered reemployment for the succeeding school year at the same salary unless the employing board of education shall cause notice in writing to be given said teacher on or before the last day of the term of the school in which the teacher is employed; and such teacher shall be presumed to have accepted such employment unless he or she shall notify the employing board of education in writing to the contrary on or before the fifteenth day of June. The employing board of education shall not cancel the contract of any teacher in continuing service status, nor cause notice of nonemployment to be given to any teacher whether in continuing service status or not except by a vote of a majority of its members evidenced by the minute entries of said board made prior to or at the time of any such action. [Emphasis added.]
Section 16-24-11 reads as follows:
No teacher, whether in continuing service status or not, shall be permitted to cancel his or her contract during the school term for which said contract is in effect, nor for a period of 45 days previous to the beginning of such school term, unless such cancellation is mutually agreed upon; any such teacher shall be permitted to cancel his or her contract at any other time by giving five days' written notice to the employing board of education. Any teacher cancelling his or her contract in any other manner than in this section provided shall be deemed guilty of unprofessional conduct, and the state superintendent of education is hereby authorized to revoke or suspend the certificate of such teacher.
These laws are pari materia and must be construed with reference to each other. A fair reading of § 16-24-12 leads to the inescapable conclusion that a new teacher is employed for a full year; otherwise there can be no justification for the language used in § 16-24-12 to the effect that the teacher is "reemploy[ed] for the succeeding school year at the same salary unless the employing board of education shall cause notice in writing to be given said teacher on or before the last day of the term of the school in which the teacher is employed." Likewise, how can the word "term" be explained if the teacher is not employed for a full year? Further buttressing the argument that the teacher by this statute expected to be employed for a year is the prohibition set forth in § 16-24-11 forbidding *370 the teacher from cancelling his or her contract during the school term or less than 45 days previous to the new school term unless such cancellation is mutually agreed upon. The penalty for so doing is extremely severe, namely, authorization to the superintendent of education to revoke the teacher's certificate and a determination of unprofessional conduct. If we were to accept the Board's argument, we would allow for the termination of Dr. Hayes at will, based on the interim contract, but if Dr. Hayes had attempted to resign on his own, he would indeed have become stigmatized by being branded unprofessional and would have exposed himself to the possible loss of his right to teach in this state.
Justice Embry recently said in Employees' Retirement System of Alabama v. Head, 369 So.2d 1227, 1228 (Ala.1979):
When this court is called upon to interpret a statute, the underlying consideration, always, is to ascertain and effectuate the intent of the legislature as expressed in the statute. Bagley v. City of Mobile, 352 So.2d 1115 (Ala.1977); Tillman v. Sibble, 341 So.2d 686 (Ala.1977).
It is clear that the intent of the legislature in passing the Teacher Tenure Act was to protect in varying degrees teachers who are tenured, as well as nontenured teachers. Our books are replete with cases deciding that a non-tenured teacher's services may be terminated at the end of the school term by proper notice and that no reason has to be assigned for the board's action. Foster v. Blount County Board of Education, supra; Irby v. McGowan, 380 F.Supp. 1024 (S.D.Ala.1974). On the other hand, the teacher has the right to re-employment if such a notice is not issued. Brown v. Board of Education, 242 Ala. 154, 5 So.2d 629 (1942). This court has also held that the non-tenured teacher has the continued right to employment and pay if, as in this case, the termination is made by a superintendent or someone else other than the board of education, which must weigh and make a determination on the facts in each individual case and spread that decision on its minutes. Board of Education of Marshall County v. Baugh, supra. This court has never had a case such as this where the non-tenured teacher was summarily dismissed before the end of the school term. However, we believe that it would be inconsistent with the legislative purpose to construe the act to allow the school board to employ a first-year teacher on a day-to-day basis while prohibiting the teacher from voluntarily terminating his employment until after the school term is over. If we were to construe the act in the manner urged upon us by the Board, we would decide that the school board could terminate at will, but the poor teacher would be bound to work as long as the school board wanted him or her or suffer the pain of the stigma of unprofessionalism and loss of an Alabama teaching certificate. In the law of contracts, such an arrangement would lack mutuality and could be voided. Hill v. Rice, 259 Ala. 587, 67 So.2d 789 (1953). We cannot construe the Teacher Tenure Act in such a fashion.
A fundamental rule of statutory construction is, "If a statute is susceptible of two constructions, one of which is workable and fair and the other unworkable and unjust the court will assume that the legislature intended that which is workable and fair." State v. Calumet and Hecla Consol. Copper Co., 259 Ala. 225, 233-34, 66 So.2d 726, 731 (1953).
Under the circumstances, we are constrained to hold that Code 1975, § 16-24-12, when considered pari materia with Code 1975, § 16-24-11, and the underlying intent of the Act gave Dr. Hayes an expectancy of employment to the end of the school term.
This is not to say that Dr. Hayes could not have been discharged for cause. He could have been discharged for cause if he had received proper notice and a hearing and a fair consideration of the charges brought against him by the Board. Having an expectancy of one year's employment, Dr. Hayes had a property interest which entitled him to procedural due process, mandated by Board of Regents v. Roth. There the United States Supreme Court said:

*371 Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state lawrules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

Roth, at 577, 92 S.Ct. at 2709.
Dr. Hayes's property right is founded in Code 1975, § 16-24-12. We would not countenance such an interim contract where a tenured teacher is involved because it would be against the public policy of our state. The non-tenured teacher does not enjoy the full panoply of rights enjoyed by the tenured teacher. But to the extent that the non-tenured teacher is entitled to expect to work to the end of the school term, that teacher cannot be terminated before the year is out without the protection of procedural due process.
For the foregoing reasons the judgment of the Court of Civil Appeals is due to be reversed.
REVERSED AND REMANDED.
MADDOX, JONES, SHORES and BEATTY, JJ., concur.
ALMON, J., concurs in the result.
TORBERT, C. J., and FAULKNER and EMBRY, JJ., dissent.
EMBRY, Justice (dissenting):
I am compelled to agree with the decision of the Court of Civil Appeals in this case. I view this matter as purely one of a nonadhesion contract knowingly entered into upon the part of Hayes with complete awareness that it contained the critical contract term referred to in the opinion of the Court of Civil Appeals which provided that "Your responsibilities will begin September 22, 1978 and [will be] subject to immediate termination upon notice...." Under these circumstances I would hold that Hayes was possessed of no Roth rights to a hearing and reasons for terminating his employment, but to the contrary would hold that if, indeed, he was possessed of any such rights the contract entered into by him with the Mobile County Board of School Commissioners constituted a waiver of any such rights.
The record, as well as logic and reason, amply supports the rationale expressed by Judge Scruggs in the opinion of the Court of Civil Appeals when he said:
This type of teacher contract was locally known as an interim contract and had been used for about four years in approximately one thousand instances, some of which being utilized to hire regular teachers who were employed after the beginning of a school term. This particular kind of interim contract was used to give to the superintendent's staff more flexibility in filling vacancies and transfers and also to establish a probationary period during which a new teacher, who, of necessity, might have been hastily employed without time or opportunity for prior evaluation, could be summarily terminated upon notice should his employment not prove satisfactory.
I cannot conclude that the statutes cited and discussed in the majority opinion have any bearing on this case. For the reasons stated, I would quash the writ in this case as improvidently granted or write an opinion affirming the Court of Civil Appeals on the bases on which that court decided this case.
TORBERT, C. J., and FAULKNER, J., concur.