625 So.2d 425 (1992)
Ex parte Lucy M. JACKSON.
(Re Lucy Mae JACKSON
v.
ALABAMA STATE TENURE COMMISSION).
1901959.
Supreme Court of Alabama.
June 19, 1992.
On Application for Rehearing March 26, 1993.
*426 Gregory B. Stein of Stein and Brewster, Mobile, for petitioner.
Frank G. Taylor of Sintz, Campbell, Duke & Taylor, Mobile, for respondent.
David R. Boyd and Patricia A. Hamilton of Balch & Bingham, Montgomery, for amicus curiae Alabama Ass'n of School Boards.
Edward Still, Birmingham, for amicus curiae Alabama Educ. Ass'n.
Gaile Pugh Gratton and James Pennington of Lange, Simpson, Robinson & Somerville, Birmingham, on rehearing, for amicus curiae Birmingham City Bd. of Educ.
ADAMS, Justice.
Lucy Jackson, a teacher in the Mobile County school system who has attained "continuing service status" ("tenure") pursuant to Ala.Code 1975, §§ 16-24-1 to -13, petitions this Court for certiorari review of a judgment of the Court of Civil Appeals in an action arising out of a decision by the Mobile County Board of School Commissioners ("the Board") to cancel Ms. Jackson's employment contract. We reverse and remand.
On March 14, 1990, the Board adopted a proposal to cancel Ms. Jackson's teaching contract. However, she was not notified of the proposed cancellation until August 1, 1990. On August 20, 1990, at a hearing convened for consideration of the proposal, the Board voted to cancel her contract. After the Alabama State Tenure Commission ("the Commission") affirmed the decision of the Board, Ms. Jackson sought a writ of mandamus from the Mobile County Circuit Court directing the Commission to reverse its order. The circuit court denied her petition, and Ms. Jackson appealed to the Court of Civil Appeals, which, on the authority of *427 this Court's holding in State ex rel. Steele v. Board of Education of Fairfield, 252 Ala. 254, 40 So.2d 689 (1949), affirmed the judgment of the circuit court. 625 So.2d 425. We granted Ms. Jackson's petition for certiorari review of the judgment of the Court of Civil Appeals in order to reexamine the holding in Fairfield.
All parties agree that the disposition of this case turns on the proper application of § 16-24-12, which provides:
"Any teacher in the public schools, whether in continuing service status or not, shall be deemed offered reemployment for the succeeding school year at the same salary unless the employing board of education shall cause notice in writing to be given said teacher on or before the last day of the term of the school in which the teacher is employed; and such teacher shall be presumed to have accepted such employment unless he or she shall notify the employing board of education in writing to the contrary on or before the fifteenth day of June. The employing board of education shall not cancel the contract of any teacher in continuing service status, nor cause notice of nonemployment to be given to any teacher whether in continuing service status or not except by a vote of a majority of its members evidenced by the minute entries of said board made prior to or at the time of any such action."
(Emphasis added.) More specifically, Ms. Jackson contends that this section required the Board to notify her of its proposed termination by the end of the school term, so as to provide her the opportunity to secure similar employment for the succeeding school year an opportunity that, she argues, she was effectively denied by the board's four-month notification delay.
In Fairfield, this Court held that Ala.Code 1940, tit. 52, § 360, the predecessor of § 16-24-12, did not apply to tenured teachers, despite the phrase "Any teacher in the public schools, whether in continuing service status or not" (emphasis added). Observing that tenured teachers may be terminated only for cause, while nontenured teachers may be terminated summarily at the end of the school year with "the expiration of the period covered by the contract," the Court reasoned that the phrase "whether in continuing service status or not" was surplusage, or "abortive," as to tenured teachers. Fairfield, 252 Ala. at 258, 40 So.2d at 692.[1]Fairfield's construction of the predecessor of § 16-24-12, which contains the phrase as it relates to the duties of the board of education vis-à-vis the teacher, thus effectively excised from the statute the express references to tenured teachers.
Ms. Jackson and amicus curiae, the Alabama Education Association ("the AEA"), contend that Fairfield's construction of § 16-24-12 is inconsistent with this Court's interpretation of § 16-24-11, which contains the same phrase in the context of the teacher's duties vis-à-vis the board of education. Section 16-24-11 provides:

"No teacher, whether in continuing service status or not, shall be permitted to cancel his or her contract during the school term for which said contract is in effect, nor for a period of 45 days previous to the beginning of such school term, unless such cancellation is mutually agreed upon.... Any teacher canceling his or her contract in any other manner than in this section provided shall be deemed guilty of unprofessional conduct, and the state superintendent of education is hereby authorized to revoke or suspend the certificate of such teacher."
(Emphasis added.) In Faircloth v. Folmar, 252 Ala. 223, 40 So.2d 697 (1949), this Court construed tit. 52, § 359, the predecessor of § 16-24-11, to restrict the right of a tenured teacher to cancel her contract with the employing school board. See also Alabama *428 Ass'n of School Bds. v. Walker, 492 So.2d 1013 (Ala.1986). Ms. Jackson and the AEA contend that to construe the phrase as applying to tenured teachers in one section while denying its application to tenured teachers in the following section of the same statutory scheme violates certain fundamental principles of statutory interpretation. We agree.
Sections of the Code originally constituting a single act must be read in pari materia in order to "produce a harmonious whole."[2] 2A Sutherland Stat. Const. § 46.05 (5th ed.); see also Ex parte Hayes, 405 So.2d 366, 369 (Ala.1981) (§§ 16-24-11 and -12 "are in pari materia and must be construed with reference to each other"); Darks Dairy, Inc. v. Alabama Dairy Commission, 367 So.2d 1378 (Ala.1979); Southern Industrial Inst. v. Lee, 234 Ala. 404, 175 So. 365 (1937). Thus, where a clause or phrase relating to the "same object or subject matter" is repeated throughout an act, such clause or phrase should receive a consistent construction throughout the act. House v. Cullman County, 593 So.2d 69, 72 (Ala.1992).
Moreover, every clause in an act must be accorded a field of operation if possible. McCausland v. Tide-Mayflower Moving & Storage, 499 So.2d 1378 (Ala.1986); In re Ashworth, 291 Ala. 723, 287 So.2d 843 (1974). A clause or phrase may be excised from a statute, as one was in Fairfield, only if it is "certain that the legislature could not possibly have intended the words to be in the statute, and that the rejection of them serves merely as a correction of careless language and actually gives the true intention of the legislature." 2A Sutherland Stat. Const. § 47.37 (5th ed.) (emphasis added). A careful reading of the Teacher Tenure Act as a whole compels the conclusion that the de facto elimination of the phrase from § 16-24-12, rather than removing difficulties from the act, has, instead, compounded them.
Specifically, Ms. Jackson and the AEA contend that the Fairfield construction creates a considerable disparity in the protections afforded the parties to a teaching contract in the event of a cancellation by either of them. The AEA insists that a "teacher's contract of employment with a school board is not simply a contract till `death, resignation, or discharge do us part.' Each teacher enters into a yearly contract setting forth her salary and duties." Brief of Amicus Curiae Alabama Education Association, at 9 (emphasis in original). Ms. Jackson and the AEA thus contend, in effect, that the interim between school termsduring which most teaching positions are filledis a crucial period for both the teacher and the school board, tenure notwithstanding.[3]
The legislature's answer to the school board's concerns during this period was to prescribe in § 16-24-11 a 45-day period preceding the pending school term during which the tenured teacher cannot cancel her contract without penalty. Section 16-24-11, which additionally requires the teacher to notify the board of her decision to cancel the contract at least 5 days before that period, thus affords the school board a 50-day "assurance period" during the crucial summer season.
Fairfield, by contrast, denies tenured teachers a corresponding accommodation. Instead, its construction of § 16-24-12 permits school boards to postpone for the entire duration of the critical hiring and negotiation period their notifications of proposed contract cancellations. Thus, a teacher, having been falsely assured of a continuing contract due to the absence of notification of a contract cancellation during the crucial hiring period, may be unable to secure another teaching position for the succeeding year.
Such disparities in the obligations of the parties are repugnant to the policies underlying the Teacher Tenure Act. Ex parte Hayes, 405 So.2d 366, 370 (Ala.1981) (rejecting a construction of §§ 16-24-11 and -12 that failed to require mutuality of obligations). Through the passage of this act, the legislature intended to provide tenured *429 teachers with a measure of "security and permanence in their employment. Ex parte Wright, 443 So.2d 40, 42 (Ala.1983); Madison County Board of Education v. Wigley, 288 Ala. 202, 259 So.2d 233 (1972). This legislative scheme should be liberally construed in favor of tenured teachers. Barger v. Jefferson County Board of Education, 372 So.2d 307, 309 (Ala.1979)." Alabama Ass'n of School Bds. v. Walker, 492 So.2d 1013, 1017 (Ala.1986).
Moreover, under Fairfield's construction of § 16-24-12, the school board is required to notify a non tenured teacher of a proposed termination before the end of the school year. Fairfield thus creates the anomalous situation in which the Teacher Tenure Act provides less protection for a tenured teacher than for her nontenured colleagues. Such a result could not have been the intent of the legislature. See Ex parte Hayes, 405 So.2d at 371 ("non-tenured teacher does not enjoy the full panoply of rights enjoyed by the tenured teacher").
More significantly, however, the Fairfield construction presents serious due process issues. The Commission concedes that without the applicability of the notice provision in § 16-24-12, the Board, having voted on March 14 to cancel Ms. Jackson's contract, was not constrained by any provision of the Teacher Tenure Act to notify her within a specific date. This absence of statutory directive, a phenomenon created by Fairfield's construction of § 16-24-12, was recently noted in Richardson v. State Tenure Commission, 585 So.2d 49 (Ala.Civ.App. 1991), a case involving similar issues. The court stated:
"The teacher argues that the board violated the provisions of the state tenure law by waiting until October to give the teacher notice of the cancellation which had been proposed in July. However, we can find no provision governing the time in which the proposal to cancel a teacher's contract is made and notice of the proposal is given to the teacher. As noted above, the tenure provision requires only that the notice of the proposed termination be given no less than 20 days nor more than 30 days before the hearing. As evidenced by the record, the board complied with this requirement."
Id. at 50. (Emphasis added.)
The Commission contends that the provisions in §§ 16-24-9 and -10 prescribing specific time periods for review and appeal following a teacher's notification of the school board's cancellation proposal satisfy due process requirements. We disagree. The timing of the receipt of initial notification may, in reality, seriously impede the teacher's ability to invoke the administrative procedures provided in §§ 16-24-9 and -10. For example, a late-summer cancellation notification may, because of the limited time remaining in which to secure a position, constrain the teacher to forgo the very administrative procedures designed to afford due process. Cf. Board of Regents of State Colleges v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); James v. Board of School Comm'rs of Mobile County, 484 F.Supp. 705 (S.D.Ala. 1979); Board of Educ. of Choctaw County v. Kennedy, 256 Ala. 478, 55 So.2d 511 (1951); Brown v. Alabama State Tenure Comm'n, 349 So.2d 56 (Ala.Civ.App.1977). Thus, a statutory scheme that is "open-ended" at the threshold, that is, which sets no limitation on the time that may elapse between the initial cancellation proposal and the actual notification, may render nugatory the due process protections intended by the legislature.
In view of these considerations, we cannot accept Fairfield's conclusion that the contested phrase, in the context of a tenured teacher's contract cancellation, constitutes surplusage. Neither can we conclude that the "legislature could not possibly have intended the words to be in the statute." 2A Sutherland Stat. Const. § 47.37 (5th ed.). On the contrary, it appears to us that the legislature included the phrase "whether in continuing service status or not," in order to prevent the very result obtained in this case, that is, the hardship resulting from the Board's four-month delay in notifying Ms. Jackson of the proposed contract cancellation. Fairfield, therefore, to the extent that it holds § 16-24-12 to be inapplicable to tenured teachers, is overruled.
*430 In answer to Fairfield's expressed concern that § 16-24-12, if applied to tenured teachers, would "limit the right of an employing board of education to cancel the contract of a teacher for cause to [a] specific time during the year," Fairfield, 252 Ala. at 258, 40 So.2d at 693, we emphasize that the result we reach today should not be read to preclude the cancellation of a tenured teacher's contract during the summer if new grounds for cancellation arise after the end of the school term. Moreover, where such new grounds arise, the school board, in considering a cancellation proposal, shall not be limited in its consideration to alleged acts of malfeasance or nonfeasance occurring during the summer, but may consider such acts in light of the teacher's performance throughout that teacher's career. We hold only that where, as here, the school board's proposal to cancel a teacher's contract predates the end of the school term, § 16-24-12 requires that tenured teachers, like their nontenured counterparts, be notified of the decision before the end of the term. Consequently, the judgment of the Court of Civil Appeals is reversed and the cause is remanded for a disposition consistent with this opinion.
REVERSED AND REMANDED.
HORNSBY, C.J., and MADDOX, ALMON, SHORES, HOUSTON, STEAGALL, KENNEDY and INGRAM, JJ., concur.

ON APPLICATION FOR REHEARING
ADAMS, Justice.
The Birmingham City Board of Education ("Birmingham Board"), as amicus curiae on application for rehearing, has posed a fact situation that it concedes is unlikely to occur, but which, if it did occur, would fairly demand a result different from the one we reach in this case. It is our experience that this Court functions best when addressing real fact situations that present concrete issues properly preserved for review. Thus, although we understand the problems that would be presented by the Birmingham Board's hypothetical and are sympathetic with its concerns, we prefer not to address that hypothetical; until real facts arise and such a case is actually presented, any statements we might offer would amount to an advisory opinion.
APPLICATION OVERRULED.
HORNSBY, C.J., and MADDOX, ALMON, SHORES, HOUSTON, STEAGALL and INGRAM, JJ., concur.
NOTES
[1] The Court stated that "the legislature intended merely to emphasize the fact that the provisions of [§ 360] applied to those teachers who were not in continuing service status, for with one or possibly two exceptions all the preceding sections... relate exclusively to tenure teachers." Fairfield, 252 Ala. at 258, 40 So.2d at 692-93 (emphasis added). It also expressed the concern that § 360, if applied to tenured teachers, would "limit the right of an employing board of education to cancel the contract of a teacher for cause to [a] specific time during the year." Fairfield, 252 Ala. at 258, 40 So.2d at 693.
[2] Section 16-24-12 originally constituted § 10 of the "Teacher Tenure Act," Act No. 499, 1939 Ala.Acts 759, amended by Act No. 411, 1945 Ala.Acts 646; Act No. 773, 1953 Ala.Acts 1040; and Act No. 1079, 1973 Ala.Acts 1835.
[3] At the August 20 hearing, principal Mona Girby conceded that "most teachers are hired during the summer months."