5 So.2d 629

### BROWN v. BOARD OF EDUCATION OF BLOUNT COUNTY.

6 Div. 921.

Supreme Court of Alabama.

Jan. 15, 1942.

Marion F. Lusk, of Guntersville, for appellant.

J. T. Johnson, of Oneonta, for appellee.

THOMAS, Justice.

The bill sought construction and application of complainant's status as a teacher in the public schools under § 10 of the Teacher Tenure Act. Code 1940, T. 52, § 360. The pertinent provisions of said act are given place in our Code of 1940, T. 52, § 351 et seq.

The act defines the term *teacher* as one who may be employed as an instructor, principal or supervisor in the public elementary or high schools of the state. Section 352 of the act is as follows: "Any teacher in the public schools, who shall meet the following requirements, shall attain continuing service status: (a) Such teacher shall have served under contract *as a teacher in the same county or city school system for three consecutive years* and shall thereafter be re-employed in such county or city school system. (b) Such continuing service status can be conferred only by the re-employment of such teacher for the school year beginning in the fall of 1940, or for some subsequent school year." (Italics supplied.)

The respective claims of the parties at interest in this proceeding, as set out in the pleadings, are to the effect that on October 3, 1940, complainant-appellant filed her bill of complaint, alleging that she was a teacher in the public schools of Blount County, Alabama, during the school year 1939–40, teaching at Woodard School at a salary of $65 per month; that the defendant did not during that school year on or before May 1, 1940, cause notice in writing to be given her that she was not or would not be re-employed for the succeeding school year at the same salary; that complainant before the beginning of the 1940–41 school year informed defendant of her readiness, ability and willingness to perform the duties required of her as a teacher for the coming year, but that defendant failed and refused to recognize complainant as a teacher; that it has failed and refused to assign her to a school or to any teaching service and has failed and refused to pay her salary of $65 per month; that defendant has pretended and claimed that *it could not employ complainant because she had taught for only one year,* but that defendant in filling vacancies for the 1940–41 term has employed other teachers who had taught for only one year and has even employed teachers residing outside of Blount County for the year 1940–41. The bill also alleged the existence of a dispute between the parties as to complainant's rights, status, or legal relations with defendant under the Teacher Tenure Law and prayed for specific performance of the contract, for a judicial declaration of her rights, for a judgment against defendant, and for general relief.

Defendant's answer, as amended, admitted the employment and admitted that it had not during the school year 1939–40 on or before May 1, 1940, caused written notice to be given complainant that she was not or could not be re-employed for the succeeding school year at the same salary; admitted that it had employed other teachers with only one year's teaching experience and had employed teachers residing outside of Blount County for the year 1940–41, but denied that it had pretended or claimed it could not employ complainant on the ground that she had taught only one year.

The answer then set up the following matters: (1) That defendant had not been informed prior to the service of the summons of complainant's readiness, ability and willingness to perform teaching service; (2) that complainant breached her 1939–40 contract by failing to teach for the minimum term of seven scholastic months without being excused therefrom by the superintendent, and that defendant had never condoned said breach; (3) that defendant near the end of the school year 1939–40 sent complainant a contract for the next school year but that said contract was never returned; (4) that complainant knew or should have known, that the Woodard School was to be consolidated with the Appalachian School beginning with the 1940–41 school year, and the Woodard School abandoned and its pupils enrolled in Appalachian School and her services would no longer be needed at Woodard School; (5) that complainant "has not to this day come to the office of the Superintendent to seek employment for the year 1940–41 or asked for an assignment to a school as required by the policy and rules of the Superintendent and Board;" (6) that complainant by seeking teaching employment in another county for the school year 1940–41 manifestly abandoned any contract she might have had with the Superintendent or Board; and (7) that complainant breached

§ 3 of her 1939-40 contract by employing her sister to teach in her place for eight school days while complainant was sick, said sister not having a teacher's certificate and not being qualified as a teacher or a substitute teacher, and that defendant has never condoned said breach.

The effect of the testimony is that in addition to confirming the admitted allegations of the complaint, the complainant sometime in March, 1940, went to Supt. Maynor's office and asked if she could arrange to end her school a week earlier in order to go to the State Teachers' School at Jacksonville and prepare herself for a first grade certificate. Mr. Maynor was out, but his secretary Miss Grace Fendley, after discussing the matter with complainant told her that as between the two methods of teaching an extra hour each day, or teaching each Saturday for five Saturdays, the latter method was the better. Complainant did carry out said suggestion, and without objection or even criticism from a single patron of the school, taught school for five Saturdays, the last day on which she taught being Saturday, April 27th, the regular closing of the school having been scheduled for May 3rd; that complainant borrowed money to go to Jacksonville but was prevented by her parents on the ground that her health would be endangered.

The testimony further shows that in March, 1940, complainant was sick for about eight days and employed her sister Audrey to teach in her place for that time, paying her for the time she taught, it being admitted that said sister Audrey had no teacher's certificate of any kind and that complainant did not obtain permission to do this and did not notify the Superintendent or the Board that she was doing it; that sometime in March, 1940, complainant's father John Cornelius met Supt. Maynor in the lower hallway of the courthouse at which time the Superintendent stated that he understood Mr. Cornelius had a sick daughter out at Woodard, to which the father replied that the girl was not at Woodard but at home, and that his other girl was there teaching in her place, to which Supt. Maynor remarked, "fine," and went on up the stairs to his office, after patting Mr. Cornelius on the shoulder.

The witness William F. Maynor, Supt. of Education, testified that during the latter part of April, 1940, he went to Woodard School and learned that complainant had left the school a week earlier than the scheduled date for closing; that she had in the preceding month employed an unlicensed substitute to teach for her for eight days and that complainant was seeking employment in another county, but that he did nothing about it and the board did nothing about it.

The witness further testified that he knew his secretary (who had sixteen year's experience in her position) talked with the teachers when they came in to see about things and knew that they talked with Miss Fendley. Such was the practice in the spring of 1940 as in other years and he had never reproached or corrected his secretary for talking with the teachers and advising them about the school matters.

The witness Maynor further testified that about April 1, 1940, he mailed to complainant a contract signed by him for the board for the school year 1940-41, providing for a seven months term at $65 a month, and that the contract was never returned by complainant. The complainant testified she never received the contract. The superintendent further testified that he had recommended complainant to the board as possessing the requisite character and that he had told complainant he would do what he could to find her a school; that he had a contract for her to sign in the event he did find a school for her; that he treated her just like the others; that complainant came to his office several times during the summer of 1940 and on those occasions he told her he would use her if he could, "if he had a place," that she would be no exception to the rule but that he had to use first those with three years' experience. The witness repeated that before the contract was mailed to complainant, he had recommended her to the board "to pass the character test," and that she had passed the character test; that under § 161 of the 1927 School Code (Code of 1940, T. 52, § 123) it was then his duty to place her; that in March or April of each year the board approved a list of teachers as a whole, making it then his duty to place them.

The superintendent further testified that he never did complain to complainant about closing her school a week early and that he never said anything to complainant about her sister having substituted for her in March. On the issue of whether or not defendant had condoned complainant's failure to teach until May 3rd and her action in having her sister Audrey teach for her, the testimony shows that complainant re-

ceived her last check on June 22, 1940, said payment being based on a payroll made up about May 10, 1940, containing a certificate by Superintendent Maynor and endorsed "O.K." by George E. Pass, the Chairman of the Board.

The testimony of Miss Grace Fendley, Secretary to the Superintendent, showed that complainant came to the office a few days before June 22nd and stated that her check had been refused at the bank on the ground that her school register had not been properly filled out; that complainant took her register away and brought it back a few days later completed and signed, and upon delivery of this register to witness, she instructed the bank to deliver complainant's check to her, and that until that was done on June 22nd, the money was under the control of the board of education.

The decree held that the Teacher Tenure Act must be strictly construed and that by her breach of the contract complainant had deprived herself of the right to claim under the act and her bill of complaint was dismissed.

The insistence of appellant is that the act is remedial and should be liberally construed in favor of the teachers who constitute the class designated as the primary beneficiaries of the act.

In the case of Board of Education of Marshall County v. Baugh et al., 240 Ala. 391, 199 So. 822, it was held:

"The Teacher Tenure Act was intended to secure to the teacher a continuing service for the succeeding year unless given written notice to the contrary under the direction of the county board not later than the first day of May. Gen. Acts 1939, p. 761, § 10.

"Written notice of the termination of teacher's employment involves a delicate exercise of a wise discretion by the county board which could not delegate the matter to the county superintendent of education or any one else. Gen. Acts 1939, p. 761, § 10.

"The county board of education speaks through its records, or written memorials of its actions."

With this construction of the act, do the averred facts and the evidence supporting the same, show complainant to be within the preferred class?

The provisions of § 360, T. 52, Code 1940, are as follows:

"Any teacher in the public schools, whether in continuing service status or not, shall be deemed re-employed for the succeeding school year at the same salary, *unless the employing board of education shall cause notice in writing to be given said teacher on or before the last day of the term of the school* in which the teacher is employed; provided, however, that in no case shall *such notice be given* the teacher *later than* the *first day* of *May of* the *termination of such employment,* and such teacher shall be presumed to have accepted such employment unless he or she shall notify the employing board of education in writing to the contrary on or before the first day of June." (Italics supplied.)

The section of the Code last quoted has been construed to mean that notice must issue to teachers of non-employment, according to the requirements of statute, whether or not they fall within the continuing service class or status. Holcombe v. County Board of Education of Marion County et al., ante, p. 20, 4 So.2d 503.

Thus the determining question of fact is that of notice vel non to complainant. The evidence was without conflict that notice of discontinuance of employment was not given to complainant as required by the statute.

It results that the decree of the trial court is reversed and one here rendered for complainant.

Reversed and rendered.

GARDNER, C. J., and BROWN and FOSTER, JJ., concur.