43 So.2d 811

### ENZOR et al. v. FAIRCLOTH.

### 4 Div. 576.

Supreme Court of Alabama.

Dec. 15, 1949.

Rehearing Denied Feb. 2, 1950.

Oliver W. Brantley, Troy, for appellants.

Richard T. Rives and John C. Godbold, Montgomery, and John C. Walters, Troy, for appellee.

FOSTER, Justice.

This is the second appeal in this case. The first is reported in Faircloth v. Folmar, 252 Ala. 223, 40 So.2d 697.

The question presented is whether or not the appellee, Mrs. Faircloth, was entitled to a writ of mandamus directed to the members of the county board of education ordering them to restore her to the roll of teachers in said county. She had attained the status of continuing service under section 352, Title 52, Code. She had been teaching at Tarentum in Pike County, which was the place of her residence and where she and her husband owned a home and she had been principal of that school.

In June of 1947, she received a letter from the acting county superintendent of education inquiring if she would be available to teach in the public schools of Pike County during the year 1947–48, to which she replied on June 24, 1947 that she wished to make a change and did not desire to be a principal as she had been at Tarentum. On July 15th she received a letter from the county superintendent advising her that he would like to discuss plans with her and would like to see her in his office on July 18th. On July 18th she went to his office and they had a discussion. Mrs Faircloth was not willing to teach at Tarentum either as principal or otherwise, although such a place was offered her. The superintendent suggested that there were vacancies in several other named schools which they discussed. She did not wish to teach in any of them. The school at Sessions, which was several miles north of Troy, was not mentioned at that time. The superintendent told her to come back to his office in a few days and in the meantime he would see what he could do for her. Thereafter, on the 25th of July, there was a meeting of the county board of education and the problem presented by Mrs. Faircloth was considered and on that day it was provided, as shown by the minutes of the meeting, that Mrs. Mamie DuBose be transferred from the Sessions School to act as principal of the Tarentum School, and Mrs. Faircloth be transferred to teach in the Sessions School. Another teacher who had been teaching in the Sessions School was made principal of that school. It was a three teacher school.

After the meeting of July 25th the county superintendent had a conversation with

Mrs. Faircloth and told her of the action of the board. She asked whether or not that action was final and made the statement that she and her husband had bought a farm and home at Tarentum and it was too far from home and she could not accept the school at Sessions. There was some discussion about her boarding at Sessions during the week and other incidental matters. She asked if that was the only assignment that could be made her. The county superintendent told her it was and that it was impossible to locate jobs close to home and convenient to everybody, and she replied that being final she could not accept it. That was the substance of the conversation.

On August 8th thereafter, the county superintendent of education wrote her a letter informing her formally that she had been placed as a teacher in the Sessions School and to let him know in writing within the next ten days whether she would accept. On August 11th she wrote him that she could not accept the place as teacher at Sessions but would appreciate a more convenient transfer. At a meeting of the board on August 29th, as shown by the minutes, it was made to appear that for the school at Sessions Mrs. Faircloth was one of the teachers.

A county teachers' institute appears to have been held on September 6th and notices went out to the teachers that they would be expected to attend. Mrs. Faircloth did not attend the institute and gave no reason for not doing so, except that she had no notice of it. She having failed to attend the institute, the county superintendent immediately began to make arrangements for another teacher. The school session began September 8th. The place at the Sessions School was still held open for her. On that day, however, she not appearing, another teacher was supplied temporarily until the meeting of the board on September 26th when her place at the Sessions School was filled by the election of another teacher. There was no communication between her and the superintendent or the board after her letters of August 11th to September 26th.

There was also some evidence to the effect that negotiations were had between Mrs. Faircloth and the superintendent of education of Coffee County with reference to her teaching in that county. Her home at Tarentum, we know judicially to be near the Coffee County line. She says that this occurred in 1948. There is some confusion, however, as to whether it was in 1947 during the progress of the matters which we have indicated, but she says this was after she had declined to accept the place at Sessions.

The attorney for Mrs. Faircloth went before the county board of education either on September 26th or October 31st, as to which there is some confusion in the testimony, and told the board that he came to ask for a more convenient assignment for Mrs. Faircloth. Still there was no willingness to accept the position at Sessions, the only one open to her. The evidence does not show what response was made to his request.

The trial court made a finding of facts in which appears this statement "the court finds that petitioner intended to abandon her contract and the board intended to consent to or accept the termination and that there was a termination of the contract by mutual consent of the parties unless such termination by mutual consent under the circumstances was prohibited by the teacher tenure law." The court thereupon proceeded to interpret the former opinion in this case to mean that the contract could not be effectually abandoned or terminated, even though both parties so intended, without notice and an opportunity for hearing as provided for in section 357, Title 52, Code.

It seems to be mutually understood between counsel representing both parties to this cause that the trial court misunderstood the opinion on the former appeal to be as there stated. The opinion was not due to have such an interpretation. In fact it was said in that opinion that section 357, *supra*, provides the only manner in which an employment contract with such a teacher can be cancelled *against her will*, and in another place that the only grounds on

which her contract may be *cancelled by the board* are set forth in section 356, Title 52. We then referred to her right to resign under section 359, Title 52, which had certain limitations. In no instance did we say that the contract could not be cancelled by mutual agreement without complying with section 357, *supra.* In fact, section 359, *supra,* contemplates the power of cancellation of the contract by mutual agreement.

So that if the finding of the court is correct that the contract was intentionally abandoned by petitioner and that such abandonment was accepted by the board, the result would be that petitioner was not entitled to have granted her petition for mandamus to be restored to the roll of teachers in said county. Therefore, we must determine whether or not the court was correct in finding that she had abandoned her contract and that such abandonment was concurred in by the board. As expressive of her intention not to continue to teach for that year is the fact that she did not attend the teachers' institute which, after her nineteen years' experience as a teacher, she must have known was a requirement, and her positive and unqualified refusal to accept the school at Sessions. It was made available for her until some three weeks after the school was open, during which time the place was temporarily supplied. It was not until September 26th that the place was formally filled by the board on account of her refusal to accept. Other available schools were discussed with her in the meantime but they were not acceptable to her and her refusal to teach at the Sessions School or at any of the others was not a mere act of insubordination, which is one of the grounds for her discharge upon hearing contemplated by sections 356, 357, Title 52, Code.

We agree with the trial court that under those circumstances it was an effectual abandonment of her contract which was known to and accepted by the board at their meeting held September 26th by formally electing another teacher to take her place.

Appellee lays much stress upon the case of Brown v. Board of Education of Blount County, 242 Ala. 154, 5 So.2d 629. But in a later case, State ex rel. Steele v. Board of Education of Fairfield, 252 Ala. 254, 40 So. 2d 689, we gave consideration to the question of whether that case has controlling effect when the teacher has attained continuing service status, and we held that section 360, Title 52, notwithstanding its language, was not intended in the light of sections 356 and 357, *supra,* to have application to a teacher of continuing service status. We also observed that the teacher referred to in Brown v. Board of Education of Blount County, supra, had only attained probationary employment status and not continuing service status. This also applies to the case of Whittington v. Board of Education of Barbour County, 250 Ala. 692, 36 So. 2d 83.

We have heretofore said in this opinion that we are dealing with a teacher of continuing service status and, therefore, the notice required by section 360, *supra,* has no application; and, as we said on former appeal of this case, a teacher of that status can have her contract cancelled by the board against her will only for the causes set out in section 356, Title 52, and upon pursuing the procedure provided in section 357, *supra.*

We do not consider that in this case the board cancelled the contract of this teacher but that her contract was abandoned by her, which was known to and accepted by the board and that it therefore amounted to a mutual termination of the contract as found and determined by the trial court.

The result is, we are in agreement with the finding of facts by the trial court but in disagreement with said court as to the effect of such finding. It is our view that upon the basis of such finding the petitioner is not entitled to her writ of mandamus which was awarded by the trial court. It therefore becomes necessary for us to reverse the judgment of the trial court to that effect and render a judgment in this Court denying the petition and dismissing the cause.

Reversed and rendered.

BROWN, LAWSON and STAKELY, JJ., concur.