Margaret T. ALLEN, etc., et al., Plaintiffs,

Board of Trustees for Alabama State University; and Eria P. Smith, Plaintiff-Intervenors,

v.

The ALABAMA STATE BOARD OF EDUCATION, et al., Defendants.

Civ. A. No. 81–697–N.

United States District Court, M.D. Alabama, N.D.

July 3, 1985.

Donald V. Watkins, Watkins, Carter & Knight, Montgomery, Ala., James U. Blacksher, Gregory B. Stein, Blacksher, Menefee & Stein, Mobile, Ala., Solomon S. Seay, Jr., Terry G. Davis, Seay & Davis, Montgomery, Ala., for plaintiffs.

Charles Coody, Gen. Counsel, State Bd. of Educ., T.W. Thagard, Jr., David Boyd, Balch & Bingham, Montgomery, Ala., for Alabama State Bd. of Educ., Tyson, Creel, Cherry, Higginbotham, Poole, Martin, Allen, Roberts and Teague.

Algert Agricola, Patrick Robinson, Rosa Davis, Asst. Attys. Gen., Montgomery, Ala., for Bd. of Educ. and Teague.

## MEMORANDUM OPINION

MYRON H. THOMPSON, District Judge.

The plaintiffs and plaintiff-intervenors, four black teachers and a predominantly black state university, have brought this class-action lawsuit charging, among other things, that the State of Alabama's teacher certification tests impermissibly discriminate against black persons seeking state certification. The defendants are the Board of Education for the State of Alabama, its members, and the State Superintendent of Education.

This lawsuit is now before the court on the plaintiffs' and plaintiff-intervenors' motions to enforce conditionally a settlement agreement drafted and agreed to, but not signed, by counsel for all parties. For reasons that follow, the court concludes that the motions should be granted.

### I.

On December 15, 1981, Margaret T. Allen, Yolanda F. Lamar and Beverly K. Jones, three black teachers, filed this lawsuit challenging the Alabama State Board of Education's requirement that applicants for state teacher certification pass certain standardized tests administered under the Alabama Initial Teacher Certification Testing Program. On October 14, 1983, the court certified a class, represented by Allen, Lamar and Jones, consisting of all black persons who have been or will be denied any level teacher certification because they failed to pass the tests administered under the program. On June 13, 1984, the court allowed the Board of Trustees of Alabama State University, a predominantly black university, and Eria P. Smith, a black teacher, to intervene.

Plaintiffs Allen, Lamar, and Jones and plaintiff-intervenors Smith and the Board of Trustees of Alabama State University have presented several claims. These claims are, among others, that the teacher certification tests penalize black students who had to acquire all or part of their education in racially segregated public schools and state institutions of higher learning; that the tests have an "adverse racial impact" on black students and predominantly black colleges, have no relationship to job performance, and are culturally biased; that the tests evaluate students on matters the students were not taught in the classroom; and that the tests were implemented without adequate prior notice to students and colleges. The plaintiffs and plaintiff-intervenors rest their claims on the fourteenth amendment to the U.S. Constitution and on various civil rights statutes, including 20 U.S.C.A. § 1703 and 42 U.S.C.A. §§ 1981, 1983, 1988, 2000d to 2000d–6, and 2000e to 2000e–17. They seek, among other things, declaratory and injunctive relief, backpay and frontpay, and attorney fees and costs.

## II.

Beginning in June 1984, attorneys for the parties met several times to discuss settlement of this lawsuit. Also present at some of these meetings were some of the parties' experts and some of the defendants themselves, including the state superintendent and a member of the state school board. In December 1984, the lawyers for the parties concluded that they were unable to reach a settlement and so notified the court. The court then set a trial date of April 22, 1985.

In early 1985, settlement discussions resumed. During these renewed negotiations, Donald Watkins, the attorney for the plaintiffs, Gregory Stein, the attorney for the plaintiff-intervenors, and Charles Coody, the attorney for the defendants, exchanged eight to ten proposed settlement agreements in the form of consent decrees. Finally, on April 3, after working late into the night the previous day, Coody and Watkins drafted a consent decree that they believed would be acceptable to all parties.

The state board had previously passed a resolution authorizing the state superintendent to settle all litigation involving the board, with one exception not applicable to the circumstances here.[1] Although Superintendent Teague believed the final draft reached by Coody and Watkins was acceptable, he considered the settlement too important to accept without the approval of the board. Teague and Coody therefore called a meeting of the board to discuss the proposed consent decree and to secure approval from the board.

Five of the eight board members met on April 4. A sixth board member attended briefly but left before the meeting ended. At this meeting, Teague and Coody informed the board members, in substance, that counsel for the parties had drafted a consent decree and that they, Teague and Coody, wanted the board's approval of the decree. Teague and Coody handed out copies of the decree to the board members, explained its major provisions, and answered questions. During the meeting, Teague and some board members expressed displeasure with various specific provisions in the decree; however, none of the board members voiced objections to settlement according to the terms in the decree. At the end of the meeting, Harold Martin, the presiding officer, told Teague to "go ahead" with the settlement. There was no objection from the other members of the board. The evidence reflects that Teague, Coody and the five board members present at the meeting left the meeting with the understanding that they had approved the settlement as embodied in the decree. They further understood that Coody would immediately inform plaintiffs' and plaintiff-intervenors' counsel and the court that the decree was acceptable to the board and the

---

**1.** The resolution passed on May 20, 1981, provides in relevant part that

CONSIDERATION OF GRANTING AUTHORITY TO THE STATE SUPERINTENDENT OF EDUCATION TO SETTLE AND OTHERWISE COMPROMISE CIVIL ACTIONS

WHEREAS, from time to time the State Department of Education and its individual members in their individual and official capacity are named as party defendants to various lawsuits involving the work of the State Board of Education; and

WHEREAS, from time to time it is advantageous and desirable that such lawsuits be compromised or otherwise settled without the necessity of a trial:

NOW, THEREFORE, BE IT RESOLVED that the State Board of Education does hereby authorize the State Superintendent of Education, with the advice and consent of the general counsel to the Board and Department of Education to settle and/or otherwise compromise any and all litigation involving the State Department of Education and the State Board of Education and its members when in the judgment of the Superintendent such a course of action is beneficial to and desirable for the work of the State Board of Education; provided, however, that this authority shall not be construed to permit the State Superintendent of Education to settle and/or compromise any claim for monetary relief against the individual members of the State Board of Education absent the consent of each member.

The consent decree drafted by Coody and Watkins did not involve any money damages against the board members in their *individual* capacities. Therefore, none of the parties to this lawsuit has contended that the exception to the superintendent's authority to settle applies to the decree.

superintendent and that the lawsuit was settled.[2] Later the same day, Coody so informed Watkins and asked Watkins to inform Stein. Watkins did.

On April 8, Coody and Watkins met with the court in-chambers. They presented the court with a copy of the decree they had drafted, and they informed the court that the case had been settled by all parties according to the terms in the decree. Stein could not be present for the meeting and had authorized Watkins to speak for the plaintiff-intervenors. The court informed Coody and Watkins that the settlement was acceptable, subject to the court's approving the decree for the plaintiff class pursuant to Rule 23(e) of the Federal Rules of Civil Procedure. The court also informed Coody and Watkins that a Rule 23(e) hearing would be set for June 28, 1985. The court continued the April 22 trial date.

A few days later, the Attorney General for the State of Alabama publicly attacked the settlement. Then, on April 11, 1985, in response to public criticism of the settlement, the board voted five to three to inform the court that the lawsuit was not settled.

The plaintiffs and plaintiff-intervenors then filed the present motions seeking to enforce the settlement the attorneys for the parties had reached, subject to the court's determining later whether the settlement should be approved for the plaintiff class. The parties were allowed to engage in discovery on the motions; and on April 19 and May 6, 1985, the court held evidentiary hearings to resolve disputed issues of fact.

2. One or two board members present at the April 4 meeting suggested in their testimony before this court that they did not understand that they had approved and authorized the decree. Their testimony was equivocal, and even contradictory, and this court does not credit it. Rather, this court credits the testimony of those who say such approval was given by all present. For example, one board member testified as follows:

I think all expressed opposition to the settlement, but all agreed that under the circumstances the settlement was—the Consent Decree as it was written, recommended by Dr.

## III.

Settlement of claims brought before courts is a favored means of resolving disputes. *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir.1984). Indeed, a settlement agreement is "as binding, final, and as conclusive of rights as a judgment" when the settlement is not illegal or against public policy and is fairly arrived at and properly entered into, that is knowingly and voluntarily and not by fraud or coercion. *Thomas v. State of Louisiana*, 534 F.2d 613, 615 (5th Cir.1976) (footnote omitted); *see also United States v. City of Alexandria*, 614 F.2d 1358, 1362 (5th Cir. 1980); *Fulgence v. J. Ray McDermott & Co.*, 662 F.2d 1207, 1209–10 (5th Cir.1981) (per curiam). Here, the defendants have presented an array of challenges to the enforceability of the settlement reached by counsel for all parties. None of the challenges has merit.

## A.

The defendants contend that the court lacks jurisdiction to enforce the settlement. This contention is meritless. Without question, a federal district court has jurisdiction to enforce a settlement agreement reached in a case pending before it, *Cia Anon Venezolana de Navegacion v. Harris*, 374 F.2d 33, 35 (5th Cir. 1967); *see also Mid-South Towing Co. v. Har-Win, Inc.*, 733 F.2d 386, 389 (5th Cir. 1984), including a case involving government officials. *See, e.g., Thomas, supra; see also United States v. McInnes*, 556 F.2d 436 (9th Cir.1977). *Cf. Village of*

Teague and as explained by Mr. Coody would be—I don't know what the word—we would do it. We would do—we would consent to this decree. In other words, I think there was opposition, but I think it was—the opposition was to various points in it. But overall, if this is the best we can do, then we will consent to it. And then we settled that idea. That's when I spoke up and said let the Judge take credit, and then we decided that we would all be parties to it and we would accept it as it was written.
Deposition of Harold Martin, p. 22.

*Kaktovik v. Watt,* 689 F.2d 222, 230 (D.C. Cir.1982) ("when the Government attempted to withdraw from the agreement, plaintiffs could have enforced it by requesting the district court to enter the appropriate order") (footnote omitted).[3]

The defendants' reliance on *Fairfax Countywide Citizens v. Fairfax County,* 571 F.2d 1299 (4th Cir.), *cert. denied,* 439 U.S. 1047, 99 S.Ct. 722, 58 L.Ed.2d 706 (1978), is misplaced. There, the plaintiffs dismissed their lawsuit without having the federal district court incorporate the terms of the parties' settlement into a court order. Three years later, the plaintiffs requested that the district court re-open the case pursuant to Fed.R.Civ.P. 60(b)(6), vacate the dismissal, and enforce the settlement agreement. The district court did so. The Fourth Circuit Court of Appeals reversed, holding that the lower court lacked jurisdiction to enforce the settlement. The appellate court reasoned that, where a case is not ongoing, the district court is powerless to enforce a settlement in the case "unless the agreement had been approved and incorporated into an order of the court, or, at the time the court is requested to enforce the agreement, there exists some independent ground upon which to base federal jurisdiction," 571 F.2d at 1303 (footnote omitted); the district court's authority extends only to restoring the case to the trial docket. 571 F.2d at 1305–06.

The circumstances in *Fairfax Countywide Citizens* are not present here. The Fourth Circuit recognized that its analysis and holding were not applicable to those cases where enforcement of a settlement was sought in ongoing litigation. The appellate court specifically distinguished from its holding those circumstances where "parties to litigation pending in district court had entered into an agreement prior to final judgment whereby defendant consented to a judgment in favor of plaintiff; but prior to entry of judgment, defendant had repudiated." 571 F.2d at 1304 n. 12 (emphasis omitted). Indeed, the Fourth Circuit later acknowledged in *Gamewell Manufacturing, Inc. v. HVAC Supply, Inc.,* 715 F.2d 112, 116 n. 10 (4th Cir.1983), that " '[d]erivative' federal jurisdiction over settlement issues raised in ongoing federal litigation ... was expressly recognized by this court in the *Fairfax County* case...."

■ Here, the settlement is sought in ongoing litigation. The court therefore has jurisdiction to enforce the settlement agreement.

### B.

The defendants contend that the settlement agreement is unenforceable because Superintendent Teague lacked authority to agree to the settlement on behalf of the state school board. This contention is meritless because the facts in this case are not as claimed by the defendants.

Relying on *Board of Education of Marshall County v. Baugh,* 240 Ala. 391, 199 So. 822 (1941), the defendants argue that the state school board resolution authorizing the state superintendent to settle lawsuits on behalf of the board is illegal to the extent it authorized Superintendent Teague to settle this lawsuit. In *Board of Education of Marshall County* the Alabama Supreme Court held that a county board of education could not delegate to the county school superintendent the authority to discharge teachers because state statutes place the responsibility for discharging teachers solely on the shoulders of the county boards of education. The Court reasoned that the decision to discharge teachers "involves a delicate exercise of a wise discretion" vested by law in the county boards alone. 199 So. at 825. Along this same line, the defendants here argue

---

**3.** Indeed, a settlement may be *summarily* enforced. However, where there is a challenge to the validity of the settlement, in particular the events allegedly giving rise to settlement, the parties should be allowed to engage in discovery if necessary, and the court should conduct an evidentiary hearing to resolve all disputed mate-rial facts. *Massachusetts Casualty Insurance Co. v. Forman,* 469 F.2d 259, 260 (5th Cir.1972) (per curiam), *cert. denied,* 424 U.S. 914, 96 S.Ct. 1114, 47 L.Ed.2d 319 (1976); *Cia Anon Venezolana de Navegacion, supra. See also Mid-South Towing Co., supra.* This was the procedure followed by the court here.

that the state school board could not delegate to the state superintendent the authority to settle lawsuits involving teacher certification because by law, 1975 Ala.Code §§ 16–3–16, 16–23–2, exclusive control over teacher certifications lies with the state school board.[4] They argue that the decision to settle this lawsuit involves discretion that only the state school board is authorized to exercise. They therefore contend that only the state school board could approve and authorize the settlement in this lawsuit.

This court need not reach this issue of state law, however.[5] Superintendent Teague did not rely solely on the board resolution authorizing him to settle lawsuits. Instead, he concluded that because of the importance of this lawsuit the state school board should itself also approve and autho- the settlement. The board did just this.

■ The state school board therefore approved and authorized the settlement just as the defendants contend that it was required by law to do for the settlement to be valid and binding.

### C.

■ The defendants contend that the settlement agreement is itself illegal under Alabama law. Again relying on *Board of*

*Education of Marshall County* and 1975 Ala.Code §§ 16–3–16, 16–23–2, the defendants argue that the agreement impermissibly delegates to others the authority to regulate teacher certification. This contention is meritless.

The agreement provides for the establishment of a three-person, independent panel of experts "whose task will be that of monitoring and overseeing the test development process." ¶ 5 of the proposed Consent Decree. The panel is

> responsible to the Alabama State Board of Education for reporting that all phases of the Alabama Initial Teacher Certification Testing program, if continued by the defendants, are in conformity with the testing principles and standards enunciated in this decree. The · panel shall make reports and give appropriate advice and recommendations to the defendants, as often as desired, and shall make annual status reports to the Court and parties regarding the defendants' compliance with the technical standards contained in this decree.

*Id.* This expert panel is also responsible for determining whether any "subject-matter" examination drafted by the defendants "has been administered to a sufficient number of examinees to judge the racial effect

**4.** 1975 Ala.Code § 16–3–16 provides:

The state board of education, through its executive officer, shall prescribe rules and regulations governing the training and certification of teachers in the public schools of the state, and for the acceptance of the diplomas of the colleges and universities of Alabama, as well as of other states. The state board of education, with the advice of the state superintendent of education, shall have full power and authority to promulgate and adopt rules and regulations governing the issuance of professional and special certificates.

And § 16–23–2 provides:

All matters relating to the issuance, extension and renewal of certificates based upon credentials, including transcripts of applicants' records submitted by institutions of higher learning in Alabama approved for the training of teachers, or by institutions operated under the control of the state board of education for the training of teachers, or by institutions located in other states whose standards of training teachers are the same or equivalent

to those approved by the state board of education shall be subject to the rules and regulations of the state board of education. It shall be the duty of the state superintendent of education to submit for the approval of the state board of education from time to time rules and regulations governing the issuance, renewal and extension of certificates and to have printed a bulletin or bulletins which shall contain full information relating to the issuance, renewal and extension of certificates on credentials, including transcripts of applicants' records.

**5.** On this issue, *compare, e.g., Harden v. Adams,* 760 F.2d 1158, 1165 n. 1 (11th Cir.1985); *City of Bessemer v. Personnel Board of Jefferson County,* 420 So.2d 6 (Ala.1982); *Alabama Surface Mining Reclamation Commission v. Jolly,* 362 So.2d 919 (Ala.Civ.App.1978), *with Brown v. Board of Education of Blount County,* 242 Ala. 154, 5 So.2d 629 (1942); *Jordan v. Baldwin County Board of Education,* 373 So.2d 861 (Ala.Civ.App. 1979).

of the items" in the examination. ¶ 2(d). The settlement agreement also provides for the appointment of "panels of black Alabama educators" to review all examinations for "racial bias" and "to make recommendations to the test monitoring panel concerning their finding of bias, if any." ¶ 6. The authority of these panels—the expert panel and the black educator panels—is thus limited, extending primarily to making reports and recommendations. The settlement does not delegate to them the authority to regulate teacher certification.

#### D.

■ The defendants contend that their attorney, Charles Coody, lacked the authority necessary to settle this lawsuit, and that, if he had such authority, the settlement is unenforceable because it was not signed by him. The defendants argue that Alabama law requires that an attorney have *written* authority to settle a case in order to bind the attorney's client.[6] They further argue that Alabama law requires that before a settlement is enforceable it must be reduced to writing *signed* by the lawyers or entered into the minutes of the court.[7]

■ First of all, the general requirements necessary to the enforcement of settlements are determined by federal rather than state law when, as here, the substantive rights and liabilities of the parties derive from federal law. *Mid-South Towing Co. v. Har-Win, Inc.,* 733 F.2d 386, 389 (5th Cir.1984); *Fulgence v. J. Ray McDermott*

*& Co.,* 662 F.2d 1207, 1209 (5th Cir.1981) (per curiam). Federal law does require that an attorney have "express authority" to settle a lawsuit; it does not require that that authority be in writing. *See Mid-South Towing Co., supra. See also Cia Anon Venezolana de Navegacion v. Harris,* 374 F.2d 33, 35 n. 2 (5th Cir.1967). Here, the evidence is clear that Coody had express authority to engage in the settlement negotiations and settle this lawsuit; indeed, the state school board itself approved and authorized the settlement reached by Coody. The defendants' contention that Coody lacked authority to act for them is completely meritless.

■ Also, "[f]ederal law does not require . . . that the settlement be reduced to writing" and signed by the parties. *Fulgence,* 662 F.2d at 1209 (involving a Title VII claim). An oral agreement is enforceable against a party where that party "knowingly and voluntarily agreed to the terms of the settlement or authorized his attorney to settle the dispute." *Id.* Here, the state school board knowingly and voluntarily agreed to the terms of the settlement.

#### E.

The defendants contend that the settlement agreement is not binding because the court has yet to approve the agreement for the plaintiff class. This contention is also without merit.

> No private agreement or consent between the parties or their attorneys, relating to the proceedings in any cause, shall be alleged or suggested by either against the other, unless the same be in writing, and signed by the party to be bound thereby; provided, however, agreements made in open court or at pretrial conferences are binding, whether such agreements are oral or written.

*See also, e.g., Wright v. Fountain,* 454 So.2d 520 (Ala.1984); *Young v. Reddock,* 437 So.2d 1247 (Ala.1983). Here, the settlement between the parties was reduced to writing but was not signed by counsel. Whether these Alabama authorities require that the writing be signed by counsel is an issue this court need not reach.

---

**6.** Alabama law, like federal law, requires that an attorney's authority to settle be express. *See Daniel v. Scott,* 455 So.2d 30, 32–33 (Ala.Civ. App.1984) and cases cited therein. This court has been unable to find any Alabama law that requires that this authority be in writing, as claimed by the defendants.

**7.** The defendants rely on 1975 Ala.Code § 34–3–21, which provides:

> An attorney has authority to bind his client, in any action or proceeding, by any agreement in relation to such case, made in writing, or by an entry to be made on the minutes of the court.

*See also* Ala.R.App.P. 47, which provides:

■ "Particularly in class action suits, there is an overriding public interest in favor of settlement." *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir.1977) (citations omitted). Nevertheless, a class action may not be settled without the approval of the court, Fed.R.Civ.P. 23(e), which approval requires that the court find that the settlement is fair, adequate and reasonable. *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir.1984). In addition, prior to any approval, notice of the settlement must be given to all class members in a manner determined by the court. Rule 23(e).

The process that the court and the named parties must follow to meet these Rule 23(e) requirements is often both expensive and time-consuming. Here, it will require at least one preliminary hearing, appropriate notice to the members of the plaintiff class, receipt of any objections by class members, filing of briefs by proponents and objectors, and a hearing on the settlement during which the proponents and objectors must be given full reasonable opportunity to present their views and evidence. *See, e.g., Bennett*, 737 F.2d at 986–87; *Johnson v. Montgomery County Sheriff's Department*, 604 F.Supp. 1346 (M.D. Ala.1985); *Lurns v. Russell Corporation*, 604 F.Supp. 1335 (M.D.Ala.1984). Moreover, there is the added expense to the court and the parties of having to delay trial.

It is therefore essential that, before embarking on such procedure, the court and the parties have some assurance that the settlement is binding on the named parties. To allow the named parties to repudiate a settlement at any time, as long as the court has not approved the settlement for the plaintiff class, would permit substantial waste and abuse of the court's and the parties' time and resources; it would be administratively inefficient and unfair to both the court and the parties.

■ This court therefore holds that a settlement agreement in a class action lawsuit is just as binding on the named parties as a settlement is on the parties in any other lawsuit, subject of course to the court's final approval of the agreement for the plaintiff class.

**F.**

Finally, the defendants have presented several other, miscellaneous challenges to the settlement agreement. None of these challenges has merit either.

The defendants contend that the settlement does not meet the requirements of Rule 23(e); they argue that it is not fair, reasonable and adequate for the plaintiff class. This contention is premature. At a hearing to be held later, the court will consider whether the settlement meets the requirements of Rule 23(e).

■ The defendants contend that the named plaintiffs and plaintiff-intervenors have not authorized their attorneys to settle this lawsuit. "[A]n attorney of record is presumed to have authority to compromise and settle litigation of his. client." *Mid-South Towing Co.*, 733 F.2d at 390, *quoting Thomas v. Colorado Trust Deed Funds, Inc.*, 366 F.2d 136, 139 (10th Cir. 1966) (emphasis deleted). This presumption has not been overcome here. After substantial discovery, the defendants have failed to produce any evidence from the plaintiffs and plaintiff-intervenors themselves repudiating or in any way contradicting the actions of their counsel; and the defendants are not otherwise in a position to speak for the plaintiffs and plaintiff-intervenors.

■ The defendants have suggested that the settlement agreement is unenforceable because one or two "formulas" mentioned in the agreement have not been precisely determined and drafted by the parties. The court understands that at the time the parties' attorneys settled this lawsuit the formulas were merely administrative housekeeping matters that could be easily determined and drafted later by any one of the parties' experts. The parties and their lawyers did not consider the formulas an impediment to settlement; this court will not consider them an impediment either. In fact, the plaintiffs and plaintiff-

intervenors have indicated to the court that they are willing to allow the defendants and their experts to determine and draft the formulas.

██ The defendants have also suggested that the settlement is precluded because the court stated at the April 8 meeting with Watkins and Coody that they should consider modifying the agreement to have the defendants, rather than clerk of the court, responsible for disbursing the "liquidated damages" to the members of the plaintiff class. The court's statement was nothing more than a mere suggestion and it does not render the settlement unenforceable.

██ Finally, the defendants have suggested that this court has broad discretion to relieve the state school board from liability under the settlement, should the court determine that the board failed to act wisely and in the best interest of all citizens of the State of Alabama when it approved and authorized the settlement agreement. This court does not sit as a super-board broadly empowered to review and correct the decisions of the state board. This court's role at this time is limited to determining whether the settlement agreement meets two standards: first, whether the settlement was fairly and properly entered into and is not illegal or against public policy; and, second, whether the settlement is fair, adequate and reasonable for the members of the plaintiff class. The evidence now before the court reflects that the settlement meets the first standard; and whether the settlement meets the second standard will be determined later. Whether the board acted wisely and in the best interest of all citizens of the state is a broad and difficult question that should be resolved in another forum.

An appropriate order will therefore be entered, first, granting the motions to enforce conditionally the settlement agreement, and, second, declaring that the settlement is binding on all named parties, subject to the court's determining later whether the settlement should be approved for the plaintiff class.